## FREDERICA ROSS v. THE TOWNSHIP OF IONIA.

*Negligence—Defective highways—Failure to erect barriers—Frightening horse—Proximate cause—Pleading—Variance—Amendment—Practice in Supreme Court.*

1. Plaintiff's horse took fright while crossing a bridge at the noise of the water flowing over the wasteweir at the end of a dam the top of which formed the approach to the bridge, backed off the bridge and off the approach, and plaintiff was injured. The bridge was supplied with railings, but the approach was not, nor was there anything provided to hide the water from the sight of horses at any point upon the bridge or the approach. And it is held that the question whether or not the defendant was guilty of negligence in failing to erect barriers

at the sides of the approach should have been submitted to the jury.

2. The declaration averred that plaintiff was driving the horse, while the proofs disclosed that it was being driven by a lady companion. No objection on account of said variance was made upon the trial. And it is held that, if such an objection had been made, it would have been an abuse of discretion to refuse an amendment, and, under these circumstances, it would be manifestly unjust to affirm the judgment in favor of the defendant upon this technical ground.

3. A variance of four feet between the proofs and the averment in the declaration as to the distance from the end of the bridge to the point at which the horse backed off the approach is not fatal.

Error to Ionia. (Dodds, J., presiding.) Argued January 24, 1895. Decided March 12, 1895.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*John H. Mitchell* and *George E. & M. A. Nichols,* for appellant.

*F. C. Miller* (*Vernon H. Smith,* of counsel), for defendant.

MONTGOMERY, J. This is an action for an injury occasioned to plaintiff by reason of an alleged defect in a highway.

A dam was built across the flats east of Prairie creek, to a point 66 feet east of the west bank of Prairie creek. At the west end of this dam was a wasteweir, over which the water not carried off by the race was allowed to flow. There was a direct fall over the wasteweir of about 4 feet, and a further fall on an incline of about 3 feet. The highway in question is constructed on top of this dam to a point near where the wasteweir is, using the dam as a roadbed to that point, and completing the road across the

104 MICH.—21.

creek by constructing a bridge from that point to the west bank of Prairie creek, south of and opposite the waste-weir. The nearest point of the wasteweir to the bridge is at the east end, where it is 16 feet and 2 inches north of the bridge, and at the west end it is 28 feet north of the bridge. The bridge is 66 feet long and 16 feet wide, with railings along each side. There was nothing to hide the water from the sight of horses at any point upon said bridge, or upon coming to the same from the east side thereof. The highway, as it approaches the bridge, is 20 feet in width, being widened somewhat near the east end of the bridge, at a point 12 feet back from the east end of the bridge being 29 feet wide, and nearer the bridge being still wider. There was no railing on either side of this highway. The declaration averred that—

"Immediately north of said bridge, at a distance of less than 50 feet, was a part of the said Prairie creek mill-dam, over which the waters of said Prairie creek flowed with great and continued noise, which said noise and disturbance, and disturbance of the waters, was liable to cause and did cause horses and other animals to become frightened in crossing said bridge and in passing along said highway."

It further averred the want of railings or barriers, and that the highway was not reasonably safe and fit for travel without them. It then averred that—

"As the plaintiff was crossing said bridge, the horse, to which was attached a vehicle in which she was riding, became frightened at the roar and disturbance of the water above said bridge, and at the east end of said bridge backed the buggy in which plaintiff was riding down said embankment about 12 feet east of the said east end of said bridge, on the south side of said highway. The plaintiff was obliged to spring from said buggy in order to save her life, or to save her from injury still greater than that which she did at such time and place sustain,

and in so doing was greatly, seriously, and permanently injured in the limbs and body," etc.

The circuit judge directed a verdict in favor of the defendant, and the plaintiff brings error.

The circuit judge evidently adopted the view contended for by defendant's counsel in this Court, that the want of barriers was not the proximate cause of the injury to the plaintiff, and therefore that the plaintiff could not recover. Defendant's counsel rely, to support the ruling of the court below, upon numerous decisions of this Court, among which are *Agnew v. City of Corunna*, 55 Mich. 428; *Beall v. Township of Athens*, 81 Id. 536; *St. Clair Mineral Springs Co. v. City of St. Clair*, 96 Id. 463; and *Bleil v. Railway Co.*, 98 Id. 228.

In *Agnew v. City of Corunna* a large boulder had been left in the street after excavating the same, and leave had been given to a private individual to remove the stone. The circuit court allowed the jury to assume that a city is liable for leaving or allowing in its streets that which is dangerous, by reason of a tendency to frighten passing teams. This Court said:

"The stone, as is not disputed, was lawfully put there, in the first place, in the course of street repairs. If it was the duty of the city to see that it was not left there indefinitely, it was equally its right to sell or give it away, and, having done so, it could take no steps to interfere, unless, at the worst, the purchaser or donee delayed so long as to make it unreasonable to wait longer for him. It could not be responsible for any delay which was not unreasonable. As this case went to the jury, and as it was argued here, the plaintiff cannot make out error, unless it was illegal absolutely to leave this stone where it was left any longer than was necessary to remove it. The court was called on to say that it was a nuisance in itself. This was refused, but it was left to the jury to determine whether it was or not, and also to determine whether it was allowed to remain an unreasonable time. It is difficult to see how the court could have gone further without

imposing duties and liabilities on municipalities which would be ruinous."

It will be seen that if any language was used in the opinion which should have the construction claimed, as sustaining defendant's theory, it was unnecessary to a decision of the case, and it is apparent that the question of proximate or remote cause did not control the decision.

In *Beall v. Township of Athens* the horse of plaintiff took fright at a log lying by the side of the traveled way, and the court below charged the jury that the township was not responsible for the log being there, nor was it under obligation to remove it. This Court held that the primary cause of the accident was shown, without contradiction, to be the fright of the horse at the log at the side of the road, and the act of the driver in striking the horse a blow with his whip, and that, therefore, the alleged defect in the roadbed at some distance from the point where the horse took fright was not the proximate cause of the injury. In this case it would appear that the horse became uncontrollable.

In *Bleil v. Railway Co.*, 98 Mich. 228, it is very clear that there was an intervening cause. The injury occurred through the horse taking fright at an object remote from the accident, and, while not under the control of the driver, running against some rails piled by the side of the street.

The doctrine of an independent cause was also applied in *St. Clair Mineral Springs Co. v. City of St. Clair.*

But we think the case at bar distinguishable from all these cases, and that it should be determined upon a different principle. It is undoubted that it is often a question for the jury as to whether ordinary care requires the construction of a railing by the sides of a steep embankment. See *Malloy v. Township of Walker*, 77 Mich. 448. It is wholly inconsistent with this view to say that, in

determining whether the railing should be erected, courts and juries are not at liberty to take into consideration the conditions that surround the highway at the particular point. If in the present case it should be found that the place in question is one where horses of ordinary gentleness are liable to take fright, and back off the bridge, and off the approach to the bridge, it will not do to say that the very happening of the event which the township should have guarded against is a conclusive reason why a person injured through its neglect should not recover, and this on the ground that the want of a railing is not the proximate cause.

It is suggested that, if the declaration had alleged a fault in not having erected a barrier to cut off the view of the water, the case might have been different. But this certainly assumes as matter of law that this method of guarding against such an occurrence as the one involved here is the only method which could be adopted. Perhaps the defendant might have discharged its full duty by either course, but, having left the water in this exposed state, we think it became a question for the jury as to whether it was not negligent to leave the approach without barriers, when no other means of preventing injury existed. This would depend upon whether the conditions existing were such as to make it reasonable to suppose that horses of ordinary gentleness would take fright, and would back up in the manner in which the horse in question did, and whether, in view of this fact, ordinary care and prudence would have dictated the placing of barriers there to prevent an occurrence which might have been thus foreseen or anticipated.

The point is made that there was a variance between the proofs and the declaration, in that the plaintiff averred that she was then and there lawfully driving along said highway, while the proofs disclosed that the horse was

being driven by her companion, one Mrs. Rich. The point was not made in the court below. If it had been, it would have been an abuse of discretion to refuse an amendment, and, under these circumstances, we think it would be manifestly unjust to affirm the case upon this technical ground.

Another point is made, that there is a variance between the proofs and the declaration, in that the declaration alleges that the horse backed off the embankment at a point about 12 feet east of the east end of the bridge, whereas the proofs disclosed that it backed off at a point about 8 feet east of the bridge. We think the variance is not fatal.

Judgment will be reversed, and a new trial ordered.

LONG, GRANT, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.