105  335
136  [3]622

105  335
143  [1] 64

105  335
148  [4]605

105  335
150  [4]484

105  335
f154 [4] 56

JANE GAGE v. THE PONTIAC, OXFORD & NORTHERN RAILROAD COMPANY.

*Railroad companies—Purchase on foreclosure—Defective crossing— Proximate cause.*

1. The obligation imposed upon a railroad company by 3 How. Stat. § 3323, subd. 5, as amended by Act No. 90, Laws of 1891, to restore a highway across which it has constructed its road to its former state, as near as may be, and to construct suitable crossings for the passage of teams, rests equally upon a railroad company which receives a conveyance under 3 How. Stat. § 3408a, of the railway or railroad tracks and their appurtenances of another company from the purchaser thereof upon the foreclosure of a mortgage of the property and franchises of said company.[1]

2. Where, upon receiving such conveyance and commencing to operate the railroad so conveyed, the railroad company finds that in order to make the approach to a bridge, which its predecessor found it necessary to construct by reason of a cut at a point where its road crossed a public highway, reasonably safe for public travel, it was and is necessary to erect barriers at the sides of said approach, which duty has not been performed, it is the duty of the company receiving said conveyance to erect such barriers, and it will be liable

---

[1] 3 How. Stat. § 3408a, provides "that upon the foreclosure of any mortgage of the property and franchise of any railroad corporation, if the railway or railroad tracks and its appurtenances are or have been sold at the sale thereunder, the purchaser or purchasers are hereby authorized to sell and convey the property so purchased, together with all the rights and franchises acquired under said sale, to any other railroad company or corporation authorized by the laws of this State, not having the same terminal points, and not being a competing line, and upon such sale and the confirmation thereof, as herein provided, the company receiving such conveyance shall have the same rights, powers, and privileges, and franchises as are or may be secured to the original company whose property may have been sold under such decree."

for an injury thereafter received by reason of its failure to perform said duty.

3. A railroad company, in order to enable the public to pass over a bridge which it had erected over a cut at a point where its road crossed a public highway, constructed an approach to said bridge from dirt taken from the cut. Said approach was built as steep as the dirt would lie, was about 16 rods long, and, at the place where plaintiff received the injury complained of, was 12 and one-third feet wide, and 13 and one-third feet high from the natural level of the ground on either side. Before the building of the bridge and approach, the highway was perfectly safe for public travel. And it is held that it was a question for the jury to determine whether barriers were or were not necessary; citing *Malloy v. Township of Walker*, 77 Mich. 448.

4. Plaintiff was riding in a sleigh, drawn by a horse 13 years old, kind and gentle, and which had been safely driven over the bridge a great many times before. At the foot of the approach the driver, in order to lighten the burden of the horse, the traveled track being barren of snow, got out of the sleigh, and walked beside and drove the horse from the right side. While thus driving in the center of the track, and about 3 or 4 feet from the edge of the embankment, as shown by plaintiff's evidence, the horse made a sudden shy to the right, went over the embankment, drawing the sleigh after him, and plaintiff was thrown out and injured. The defendant's evidence tended to show that the sleigh, at the point where the tracks went off, was being drawn within a foot and a half or two feet of the embankment; that the roadbed was muddy, but along the side there was some snow; that there was a path along the embankment on each side; and one of defendant's witnesses testified that he saw plaintiff and the driver just as they were driving up the approach, and it looked as if the horse stumbled or slipped, lost his balance, and fell over the embankment. It appeared from all of the evidence that there was no train coming, no teams near the horse, or other thing to frighten him, and that there was no defect in the highway. The jury, under a proper charge, found that the horse was under the control of the driver. And it is held that it cannot be said, as matter of law, that the mere shying of the horse, and not the improper and dangerous condition of the highway (absence of barriers), was the proximate cause of the injury; that they were apparently concurring causes,—the one, the shying of the

horse, where neither party can be said to have been in fault; and the other, the defect in the highway, for which, under the finding of the jury, the defendant is liable.

Error to Tuscola. (Beach, J.) Submitted on briefs. April 17, 1895. Decided May 21, 1895.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Aug. C. Baldwin,* for appellant.

*J. D. Brooker* and *T. C. Quinn* (*Black & Dodge,* of counsel), for plaintiff.

LONG, J. This action is brought by the plaintiff to recover damages from the defendant for negligently maintaining an unsafe and dangerous approach to a crossing over its railroad, constructed by the Pontiac, Oxford & Port Austin Railroad Company, the defendant's predecessor, across a public highway, and upon which approach the plaintiff sustained permanent injuries on the 23d day of February, 1892, by being thrown down the aforesaid embankment, together with the vehicle in which she was riding and the horse hitched thereto.

In the year 1881 the Pontiac, Oxford & Port Austin Railroad Company constructed its railroad across the angling highway running north-easterly and south-westerly across section 1 of the township of Elmwood, in the county of Tuscola. At the point in said highway crossed by said railroad the said company made a cut, necessitating the building of a bridge by the company. This bridge was about 20 feet higher than the natural level of the ground. It was about 95 feet long, and 11 feet 4 inches wide. In order that persons using this angling highway could get on and over the bridge, said company constructed an approach on the north-easterly side of said bridge. This approach was built of dirt taken from the cut, was built as steep as the dirt would

lie, and about 16 rods long, and was from 12 to 13 feet wide. At the place where the accident to the plaintiff occurred, the approach was 12 feet 4 inches wide, and 13 feet 4 inches high from the natural level of the ground on either side. Before the building of the bridge and approach, the highway was perfectly safe for public travel. The defendant company has owned and operated the railroad upon which are this crossing and the approach since March 1, 1889. It appeared that the Pontiac, Oxford & Port Austin Railroad Company constructed this railroad under contract with the Farmers' Loan & Trust Company, and that a mortgage was given this company, which, upon default, took possession of the railroad, and operated it for a time. Subsequently this mortgage was foreclosed, and the railroad bid in by a committee representing the bondholders, who transferred the same to the defendant company.

Plaintiff's evidence, and the evidence of William C. Come, who was driving the vehicle in which the plaintiff was riding at the time of the accident, show that plaintiff and Come started from the home of plaintiff, situated about a mile and three-quarters from this approach, to drive to the village of Gagetown. There was no other road to Gagetown from plaintiff's home without going around a square, nearly four miles. Come was driving a horse hitched to a sleigh. At the foot of the approach Come got out of the sleigh, and walked beside and drove the horse from the right side of the sleigh, and continued driving the horse from that position until the plaintiff and the horse and sleigh went down the side of the approach. The reason for Come's getting out of the sleigh and driving from the side of the same was to lighten the burden of the horse, the traveled track of the approach being barren of snow, and because one of the tugs of the harness was weak. Come was driving in the traveled track, and in the center of the track, and about three or four feet from the edge of the embank-

ment. When about 60 feet north-easterly from the bridge, the horse made a sudden shy to the right, and went over and down the embankment, and drew the sleigh after him. Plaintiff was thrown from the seat of the sleigh very close to or on the horse's head, and thereby sustained the injuries complained of.

The bridge and the approach were erected in 1881 or 1882, and the place where the horse and sleigh went over was outside the defendant's right of way. There were no barriers along the embankment. The defendant gave evidence tending to show that the sleigh was being drawn within a foot and a half or two feet of the embankment where the tracks went off; that the road-bed was muddy, but along the side there was some snow; that there was a path along the embankment on each side. One of the defandant's witnesses testified that he saw the plaintiff and Come just as they were driving up the approach, and it looked as if the horse stumbled or slipped, and lost his balance, and fell over the embankment. It appeared from all the evidence that there was no train coming; no teams near the plaintiff's horse, or other thing to cause fright to the horse. There was no defect in the highway; and the only explanation given for the going over is that of Come, and the defendant's witness who testified that the horse seemed to have stumbled or slipped. Plaintiff's claim is that the original highway was safe; that it was the duty of the railroad company, when it made the crossing, to restore it to its original condition, as nearly as possible, or at least to make it reasonably safe for those passing over it; that it never was so made; and that, therefore, it was the duty of the defendant company, when it became the owner, to restore it or make it reasonably safe; that, if barriers had been erected, the injury would not have occurred.

The defendant contended—

1. That the railroad was built by another company,

between which and the present owner there was no privity.

2. That the embankment having been built in 1881 or 1882, and remaining without objection or accident resulting until the first company had entirely passed out of existence, the presumption is that it was built originally in due compliance with the law, and the new company, becoming the purchaser in 1889, was under no obligation to look outside of its right of way or perform any duty in such places.

These two propositions may be discussed together. The statute makes it the duty of railroad companies to restore the highway to its former state, as nearly as may be, and to construct suitable crossings for the passage of teams, etc. How. Stat. § 3323. The court below directed the jury substantially that it was the duty of the original company to construct a reasonably safe approach to the bridge,—that is, comparing it with the original highway, and that it was a question for the jury to say whether, from its height, width, and situation, and absence of railings, it was or was not a reasonably safe approach as compared with the original highway; that, if no proper approach had ever been constructed, when the defendant company purchased, it was the duty of such company to construct it so as to make it reasonably safe. We think there was no error in this charge. The question is not raised whether the approach had once been constructed and got out of repair, as it appears that no railings or barriers had ever been erected, and the only question was whether it had ever been made safe by either company. It is settled in *Thayer v. Railroad Co.*, 93 Mich. 150, that the obligation imposed by this statute continues until its proper discharge. The defendant in that case purchased from the former company, which built the road; and it was said by this Court that, by the transfer to it, the defendant took subject to all the obligations and duties prescribed by the general railroad law. Act No. 10, Laws of 1889. We think the obligation rested equally upon the

defendant company here, though it took its title through foreclosure of the mortgage. If, when it took title and commenced operating the road, it found that its predecessor had not restored the highway, it was its duty to do so. Act No. 35, Laws of 1887,[1] confers upon other railroad companies purchasing at foreclosure sale all the rights, privileges, and franchises held and enjoyed by the original company; and the defendant must be held to the same obligations and duties to the public as the former company, and if, to make the road safe, it was necessary to erect barriers there, it was the duty of the company to do so. *Thayer v. Railroad Co., supra.* It was a question for the jury to determine whether barriers were necessary. *Malloy v. Township of Walker,* 77 Mich. 448.

It is contended, further, that the proximate cause of the injury was not the want of railings or barriers.[2] The top of the roadbed was 12 feet 4 inches wide at that place. It was a smooth road, with no obstructions in it, and the plaintiff and her driver had for several years passed over it in safety. The horse was 13 years old, kind and gentle, and had been driven there a great many times. No accident had ever happened before. Plaintiff's witness Come explains the way the accident happened by saying that at this point—

"The horse pricked up his ears, and looked off to the left side as though he saw something, made a sudden shy to the right, and went down to the bottom of the embankment."

While defendant contends that the driver did not have control of the horse at that time, we find no evidence to that effect, as we cannot say that he lost control, or had not as good control of it while on foot as he would have had if riding in the sleigh. Whether

---

[1] 3 How. Stat. § 3408a.

[2] In support of this contention, counsel cited *Smith v. County Court,* 33 W. Va. 713; *Herr v. City of Lebanon,* 149 Penn. St. 222.

he was negligently driving was a question for the jury, and the court submitted that question as follows:

"If the jury find that the highway in question had been traveled uninterruptedly for a period of 10 years nearly without an accident having resulted, and was in passable condition at the time of the accident to the plaintiff or the injury to the plaintiff (the question whether it was an accident or injury is a question of fact for you, gentlemen), and was from 12 to 18 feet in width at that place, and that she and the horse and driver had frequently traveled over the highway, and were well acquainted with it, and, instead of traveling in the usual traveled track of the same, they voluntarily traveled on the side thereof at that place,—that is, on the edge of the embankment,—thus causing the accident, then the defendant would not be liable, and the plaintiff could not recover. And the same may be said in relation to the absence of railings. If there was no railing there, it was the duty of the plaintiff to exercise due care in driving near the edge of the embankment."

The charge was in accordance with the rule laid down in *Langworthy v. Township of Green*, 95 Mich. 93. The jury found, under this charge, that the horse was under the control of the driver; and it cannot be said, as a matter of law, that the mere shying of the horse, and not the improper and dangerous condition of the highway, was the proximate cause of the injury. They were apparently concurring causes,—the one, the shying of the horse, where neither party can be said to be in fault; and the other, the defect in the highway, for which, under the finding of the jury, the defendant company is responsible.

In *Hunt v. Town of Pownal*, 9 Vt. 411, the rule was held that if there be no fault on the part of the plaintiff which common sagacity and forecast could have anticipated and provided against, and the loss be the combined result of accident and the insufficiency of the road, the plaintiff may recover. This rule is also held in *Ring v. City of Cohoes*, 77 N. Y. 83.

In *Palmer v. Inhabitants of Andover*, 2 Cush. 600, it was held that,—

"In an action against a town to recover damages for an injury alleged to have been caused by a defect in a highway occasioned by the want of a rail or barrier, the town will be liable therefor if such rail or barrier were necessary for the proper security of travelers, and would have prevented the happening of the injury complained of."

In *Houfe v. Town of Fulton*, 29 Wis. 296, it was held that where, besides the defect in the highway, there is another proximate cause contributing directly to produce the injury, which cause is not attributable to plaintiff's negligence nor that of any third person, the town is still liable in case the jury find that the damage would not have been sustained but for the defect in the way. So held where plaintiff's horse, passing over a bridge without guards, suddenly stopped, staggered, and fell sidewise, and went over the side of the bridge into the river, carrying him with it; there being no want of care and prudence on plaintiff's part.    It was said in this case that—

"Whether the same rule would apply where the horse, at the time of the injury, was in a condition of flight or unmanageableness, not itself caused by any defect in the highway, is not decided.  But, if there is an exception of that kind, it does not include cases where a horse merely shies or starts or is momentarily not controlled by the driver."

The distinction there stated was made by this Court in *Bleil v. Railway Co.*, 98 Mich. 228.  In that case the injury occurred through the horse's taking fright at an object remote from the accident, and while not under the control of the driver, and running against some rails piled by the side of the street.  The doctrine of an intervening cause was also applied in *St. Clair Mineral Springs Co. v. City of St. Clair*, 96 Mich. 463.

It is apparent that the injury in the present case

would not have occurred if the defendant company had discharged its duty in respect to this highway, and that no fault was attributable to the plaintiff is settled by the jury.

The judgment must be affirmed.

The other Justices concurred.