DARDANELLE PONTOON BRIDGE & TURNPIKE COMPANY *v.* CROOM.

Opinion delivered May 30, 1910.

1. BRIDGES—CARE IN CONSTRUCTION AND MAINTENANCE.—A toll bridge should be reasonably safe for the purpose for which it was erected and is used; and where a guard rail is reasonably necessary for the safety of travelers and their property in crossing the bridge, then the owner would be liable for an injury caused by a failure to construct and maintain such rail. (Page 287.)

2. SAME—SUFFICIENCY OF GUARD RAIL.—A guard rail on a toll bridge should be constructed and maintained in such a reasonably strong and substantial manner as to withstand the ordinary weights and forces that may be expected to be pressed against it. (Page 288.)

3. INSTRUCTIONS—REPETITION.—The refusal to give a correct instruction in a case was not error where other instructions given by the court in effect covered the requested instruction. (Page 290.)

4. EVIDENCE—OPINION OF WITNESS.—The opinion of a witness that the guard rail of a toll bridge was constructed in an improper manner was properly admitted where the witness was shown to possess experience and knowledge relative to such matters to qualify him as an expert. (Page 290.)

5. TRIAL—ARGUMENT.—Where the testimony of a witness for appellant was in conflict with other testimony or with established facts in the case, it was not error to permit appellee's counsel to refer to the interest which such witness had in the result of the trial. (Page 290.)

Appeal from Yell Circuit Court, Dardanelle District; *Hugh Basham,* Judge; affirmed.

*H. M. Jacoway* and *Sellers & Sellers,* for appellant.

There is no way of keeping counsel within bounds but by setting aside verdicts. 62 Ark. 126; 22 Ia. 253; 58 Ia. 473;

61 Ark. 130; 71 Ark. 415; 74 Ark. 256; 70 Ark. 306. Counsel
has no right to assail an unimpeached witness.   77 Ark. 238;
65 Ark. 625; 75 Ark. 577; 72 Ark. 468; 63 Ark. 174; 74 Ark.
210; 72 Ark. 139; 76 Ark. 276; 65 Ark. 389; 70 Ark. 179;
76 Ark. 370; 89 Ark. 58; 87 Ark. 461; *Id.* 515; 81 Ark. 25; *Id.*
231; 80 Ark. 23.   There are extraordinary incidents, out of the
usual course of travel, for which no provision is required to
be made.   61 Ark. 149; 77 N. Y. 83; 125 Pa. 24; 81 Pa. 44;
145 Pa. 220; 109 N. Y. 134; Whart. on Neg., § § 103, 104; 68
Md. 389.

   *Bullock & Davis,* for appellee.

   Witness was qualified from years of experience to testify
as an expert.   57 Ark. 572; 23 Ark. 200.   A resident on a
stream may state that a dam has been raised too high to be
safe.   17 Conn. 249.   The instructions were correct,   61 Ark.
141; 138 Ill. 465.

   FRAUENTHAL, J.   This was an action to recover the value
of a team of mules and a wagon which fell from defendant's
bridge, and were lost.   It was alleged in the complaint that
the loss was due to the defendant's negligence in failing "to
have a safe and sufficient guard rail properly braced and strong
enough to insure safe passage over said bridge, and to prevent
frightened teams from breaking through into said river."   The
defendant owned and operated a bridge across the Arkansas
River near the town of Dardanelle, and charged and collected
fare for the crossing of persons and property over it.   The
plaintiff had driven his mules and loaded wagon upon the
bridge, and was crossing over same when the mules, either from
fright or other cause, backed the wagon against the railing
of the bridge, which broke and gave way, and the mules and
wagon were precipitated into the river; the mules were drowned
and the wagon lost.

   The testimony on the part of the plaintiff tended to prove
that the bridge was built of boats, and was what is known
as a "pontoon" bridge.   Along its sides the defendant had built
a railing or barrier.   This railing was composed of upright
posts upon which was fastened a plank or streamer.   The posts
were made of pine, and were fastened to the bottom of the
boats with bolts.   The testimony on behalf of the plaintiff

tended to prove that the posts were not built of strong wood, that the timbers in the railing were light and frail, and that the posts and railing were not braced. That because the posts were not braced the railing was not substantial and not strong enough to withstand the weight of a wagon that might ordinarily be expected to be pressed against it. And the testimony tended further to prove that if the railing had been built of heavier and sounder timber, and the posts properly braced, it would have withstood such pressure. And we are of opinion that there was some evidence adduced in the case which was sufficient to warrant the jury in finding that the railings were not constructed and maintained in such a proper and substantial manner as was necessary to secure the safety of teams that ordinarily crossed the bridge, and which might press against the railings with such force that might be, in the exercise of due care and caution, expected and foreseen; that the loss was due to the insecure and unsubstantial manner in which the railing was constructed and maintained; and that the plaintiff was at the time in the exercise of due care.

At the request of the plaintiff the court gave the following instruction:

"1. If you find that the defendant owned and operated a bridge across the Arkansas River, for the transportation of freight and passengers for toll, it was bound to use reasonable skill and diligence in providing against the ordinary dangers of travel, and to provide and maintain a reasonably safe bridge; and if guard rails and banisters be reasonably necessary for that purpose and practicable, it was bound to construct and maintain them in the places needed and of sufficient strength to be reasonably safe; and if you find that the defendant failed to so construct and maintain or keep in repair the said bridge by reason of which the injury complained of occurred you will find for the plaintiff."

At the request of the defendant the court gave among other instructions the following:

"3. Defendant is not an insurer of the safety of property carried over its bridge; nor is it required to keep guard rails of such strength that they will not give way or break under any circumstances, or resist extraordinary pressure. It is only

required to use ordinary care to keep its guard rails in a rea-
sonably safe condition, which means a condition of safety under
ordinary circumstances."

"5.   Before you would be justified in finding for the plain-
tiff, you would have to find from the evidence that at the
time of the accident the bridge, by reason of the defective guard
rail, was insufficient to furnish protection to teams under such
conditions and circumstances as were likely to occur on said
bridge; and you would have to find further that such defective
condition existed and was caused by defendant's failure to use
ordinary care."

"6.   Before you would be justified in finding for the plain-
tiff, on account of the defective guard rail as alleged in the
complaint, the proof would have to show that, in order to
furnish protection to wagons and teams crossing said bridge
under the usual and ordinary circumstances, it was necessary
to have guard rails of greater strength and sufficiency than the
ones shown to have given away; and further that the failure to
have rails of greater strength was caused by the negligent failure
of defendant to use ordinary care."

The jury returned a verdict in favor of the plaintiff, and
the defendant has appealed to this court.

It is contended by counsel for defendant that the evidence
adduced in the trial of this case was not sufficient to impose
a liability upon it, and was not sufficient to sustain the verdict
of the jury. The determination of that question depends upon
the duty which the defendant owed to the plaintiff as one of
the traveling public over its bridge and the manner in which
defendant has performed that duty. The defendant was the
proprietor of a bridge, and made a charge against the public
for crossing same. It thereby became its duty to exercise rea-
sonable and ordinary care and prudence in the construction and
maintenance of its bridge for the safety and protection of those
using it and to make reasonable provisions to prevent injuries
from causes which are likely to arise in the ordinary use of
the bridge.

A toll bridge should be so constructed that it shall be safe
for travel, and the degree of the strength of the structure
must be determined by the use which is fairly to be ex-

pected to be made of it. It should be constructed in a man-. ner strong enough to sustain those weights and to protect from injury that character of property which may fairly be expected to cross over it. While not an insurer of the person or property of its customer, the proprietor of a toll bridge is bound to exercise care to see that it is reasonably safe and secure for the purpose for which it was erected and is used. The liability of the proprietor of the bridge is founded upon negligence; and his negligence arises from the failure to exercise the necessary care in seeing that the bridge is safely constructed and maintained. If guard rails are reasonably necessary for the safety of travelers and their property in crossing the bridge, then the owner would be liable for an injury which was caused by a failure to construct and maintain such railing or barrier. In 2 Dillon on Municipal Corporations, § 1005, it is said: "Where a rail or barrier is reasonably necessary for the security of travelers on the road which from its nature would otherwise be unsafe and the erection would have prevented the injury, it is actionable negligence not to construct and maintain such guard or barrier." *Little Rock Traction & Elec. Co.* v. *Dunlap,* 68 Ark. 291; 5 Cyc. 1101; *Eads* v. *Marshall,* 29 S. W. 170.

The guard rail should be effective for the purpose for which it is erected, and should therefore be constructed and maintained in such a reasonably strong and substantial manner as to withstand the ordinary weights and forces that may be likely expected to be pressed against it. This is necessary in order to put the railing in a safe condition for the travel in the ordinary manner over such bridge. Whether or not the railing is in such condition is a question to be determined by the jury under the peculiar circumstances of each case. 2 Dillon on Municipal Corporations, § 1019; Wharton on Negligence (2 ed.), § 103.

In the case of *Walrod* v. *Webster Co.,* 47 L. R. A. 480, it appears that the horses became frightened and pressed up against the rail of the bridge, which gave way and the horses fell from the bridge. In that case it was held that there was a liability to the owner of the horses in event the accident would not have happened if the railing had been reasonably substantial; and that this was a question for the jury to determine.

In 4 Am. & Eng. Enc. Law, 942, it is said: "It is the duty of a bridge proprietor to provide and keep in repair proper railings, so far as they are necessary to secure the safety of travelers, and a failure of this duty affords ground of action to one sustaining injury in consequence." See also *St. Louis, I. M. & S. Ry. Co.* v. *Aven,* 61 Ark. 149; *Tift* v. *Towns,* 53 Ga. 47; *Rosedale* v. *Golding,* 55 Kan. 167; *Townsend* v. *Susquehannah Turnpike Road,* 6 Johns. 90; *Palmer* v. *Andover,* 2 Cush. 600; *Gage* v. *Railroad Co.,* 105 Mich. 335.

In the case at bar we think that the jury were warranted in finding that railings upon the bridge were reasonably necessary for the safety of travelers and their property, and there was some evidence tending to prove that the railings that were provided were not reasonably substantial enough and suitable for the safety of the persons and their property that ordinarily might be expected to cross the bridge and to sustain the weights that ordinarily might be expected to press against them. We are of opinion, therefore, that there was sufficient evidence to sustain the verdict of the jury, and that the court did not err in giving the instruction number 1 at the request of the plaintiff.

The defendant requested the court to instruct the jury in effect that if the guard rail was not of sufficient strength to meet ordinary requirements at the time of the accident, but that such weakness arose after the rail was placed on the bridge, then before the plaintiff could recover it was necessary to prove that defendant knew of the defect or could have known by the use of ordinary care. The court refused to give the instruction; and in this ruling we do not think that the court committed a prejudicial error. By instruction number 2 given at the request of the defendant the court instructed the jury that, before the plaintiff could recover, he must prove that the defendant had been negligent in the manner alleged in the complaint, and that the act of negligence therein set out caused the injury. The act of negligence set out in the complaint was that the defendant "failed to have a safe and sufficient guard rail properly braced and strong enough to insure safe passage over said bridge;" that is to say, that the rail was not constructed of strong enough timbers and was not properly braced.

This was the act of negligence that the plaintiff was required to prove before he could recover. The act of negligence therefore consisted in a failure to properly construct the guard rail in the beginning; and the liability of the defendant was not made dependent upon the weakness of the rail which was caused by some act or agency that occurred after its construction. The instruction requested was therefore without the issue presented by the complaint and pleadings and was abstract. The other instructions given by the court confined the right of the plaintiff to recover to his establishing by proof the act of negligence set forth in the complaint; and in effect covered this instruction requested by defendant. *St. Louis, I. M. & S. Ry. Co.* v. *Freeman,* 89 Ark. 327.

It is urged that the court erred in permitting the witness Edgar Shinn to testify that the guard rail was constructed in an improper manner, and that it was not substantial and safe. This contention is made upon the ground that this was but the opinion of the witness. But we think that this witness possessed an experience and knowledge relative to the subject-matter to qualify him as a skilled witness. The conclusion and judgment of the witness related to a subject-matter not universally understood. The witness was giving evidence in regard to a matter that required the aid of an experience outside of that possessed by the jury to fully understand it. His testimony was therefore admissible. "A witness' opinion is admissible as evidence, not only where scientific knowledge is required to comprehend the matter testified about, but also where experience and observation in the special calling of the witness give him knowledge of the subject in question beyond that of persons of common intelligence." *Railway Company* v. *Shoecraft,* 56 Ark. 465; *T. & C. Ins. Co.* v. *Fouke,* 94 Ark. 358; Lawson on Expert Ev., 73; 17 Cyc. 36; *Moore* v. *Kenockee,* 4 L. R. A. 555; *Porter* v. *Pequonnac Mfg. Co.,* 17 Conn. 249.

Complaint is also made of certain remarks of counsel for the plaintiff in his argument to the jury. Some of these remarks were mere expressions of opinion, and some were instigated by and in retort to remarks made by opposing counsel. In some of the remarks criticism was made of an opposing witness. The counsel said that the career of this witness was

wrapped up in this bridge, and he had to sustain it by his testimony. We think that counsel have the right to refer to the interest which opposing witnesses have in the result of the trial, and to comment upon such interest if the testimony of such witnesses is in conflict with other testimony or established facts in the case. We have carefully examined all the remarks complained of, and we are of the opinion that, while some of them were improper, none of them was of such a prejudicial nature as to call for a reversal. *Kansas City So. Ry. Co.* v. *Murphy,* 74 Ark. 256; *Reese* v. *State,* 76 Ark. 39; *Byrd* v. *State,* 76 Ark. 276; *Choctaw, O. & G. Rd. Co.* v. *Doughty,* 77 Ark. 1; *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 398.

We have examined into the other errors which counsel for defendant urge were committed in the trial of this case. We do not deem it useful to set them out. We do not think that any of these alleged errors was so prejudicial as to deprive the defendant of a fair and impartial trial upon the issues involved in the case.

The judgment is affirmed.