## STANTON v. TOWNSHIP OF WEBSTER.

1. HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS—ICE AND SNOW—NEGLIGENT CONSTRUCTION OF HIGHWAY.

While a township is not liable for injuries caused by natural accumulations of ice and snow upon a reasonably safe highway, it may be liable if it constructs a public road in such a manner as to be unsafe whenever it is covered with a natural accumulation of ice and snow.[1]

2. SAME—NEGLIGENCE—QUESTIONS OF LAW AND FACT—DIRECTING VERDICT.

Where plaintiff claimed that the highway in defendant township was constructed with so much slope or curve to the surface and was so narrow along an approach to a culvert that it caused the rear of his sleigh to slide down one side, which, frightening the horses, made them run until the vehicle overturned and plaintiff received injuries, the questions of negligence, contributory negligence, and proximate cause were for the jury.

3. SAME—EVIDENCE—CONCLUSIONS—JURY.

A question whether a railing on either side of the embankment would have protected plaintiff was properly excluded, since it was a matter for the jury to determine.

---

[1] The authorities on the question of the liability of townships for defects in highways are collated in an exhaustive note in 13 L. R. A. (N. S.) 1219.

4. SAME.

    Nor was it erroneous to exclude an inquiry of plaintiff's attorney why witness stated she was afraid of the road, the condition of which, by the ruling of the court, plaintiff was permitted to show fully.

Error to Washtenaw; Kinne, J.  Submitted April 5, 1912.  (Docket No. 57.)  Decided May 31, 1912.

Case by Harriet Stanton against the township of Webster, for personal injuries.  A judgment for defendant upon a verdict directed by the court is reviewed by plaintiff on writ of error.  Reversed.

*Arthur Brown* and *Andrew Sawyer*, for appellant.

*M. J. Cavanaugh* and *George J. Burke*, for appellee.

One of the highways in defendant township ran through a ravine or low place, and in this ravine the traveled part of the highway—the roadway—was constructed on an embankment, through which, in the fall of the year 1909, a culvert was laid; the approaches thereto being newly graded.  It is alleged in the declaration that the embankment, where it approached the culvert from the west—

    "Was built upon a curve and in cone shape, and so narrow upon the top of said embankment that in the nighttime teams and conveyances were liable to and naturally would slue, slide sidewise, sweep over, and fall down said embankment.  That said township negligently and carelessly failed and neglected to build or construct any railing, or any other protection, along the side of said traveled track on top of said embankment. * * * That said defendant also carelessly and negligently failed and neglected to keep the said narrow and cone-shaped embankment, where it approached said culvert from the west, free from ice and snow and snow drifts, and carelessly and negligently permitted large snowdrifts and fields of ice to form, be, and remain upon and across said traveled track of said highway, * * * and negligently and carelessly drove a large stake into the ground at or near the foot of said embankment on the south side thereof, and carelessly and

negligently permitted said stake to remain standing and being at or near the bottom of said embankment. * * *"

The road runs east and west; but, as it approaches the culvert from the west, it bends or curves somewhat to the south and then back to the north again.

When the plaintiff rested, the court, upon motion of defendant, directed a verdict for the defendant. The grounds of the motion were:

(1) Because the undisputed evidence disclosed that the proximate cause of injury was the ice in the road.

(2) Because it appeared conclusively from the evidence that the driver of the sleigh was within two or three rods from the culvert where the accident occurred when the hind bobs, or back part of the sleigh, commenced to slip or slue on the ice, towards the south, and the horses began to kick, and ran in an easterly direction, until the hind bob struck the culvert or end of the culvert, and thus caused the sleigh to tip over and injure the plaintiff.

(3) Because it appeared that the ice on the highway was a natural accumulation and a result of the elements; and therefore the township was not liable.

(4) Because the plaintiff's driver was guilty of contributory negligence, in that he was perfectly familiar with the icy condition of the road.

(5) Because the condition of the highway was not the proximate cause of the injury; but same was due to the running of the team against the end of the culvert.

(6) Because the testimony of the plaintiff failed to establish any negligence on the part of the defendant.

(7) Because the plaintiff failed to show freedom from negligence on the part of the driver of the sleigh.

The court gave no reason for the ruling.

Plaintiff's theory is indicated in the following requests to charge submitted to the trial court:

"*First*. It is the claim of the plaintiff that on the evening of February 17, 1910, as she, with several friends, was riding in a sleigh drawn by a pair of horses, driven by one Chester Johnson, along what is known as the Scio road in the township of Webster, in attempting to pass over the west approach to a culvert in said highway, that said sleigh, on account of the narrowness of the road and

the crowning or conelike shape of its top or surface, when about three (3) rods west of said culvert, commenced to slide to the south, the back end of the sleigh sliding clear off of the embankment, the tongue of the sleigh striking against the legs of one of the horses, and the tugs of the harness striking against the legs of the other horse, frightening the team and causing them to run with the sleigh turned in a slanting position almost at right angles to the road, the back end being down the side of the approach or embankment, so that the rear bob of the sleigh struck the south end of the culvert that extended several inches above the surface of the ground; that this caused the sleigh to turn over the rear bob and the box of the sleigh going into the ditch at the south end of the culvert, throwing plaintiff and the other occupants of the sleigh into said ditch.

"*Second.* It is the further claim of the plaintiff that the west embankment or approach to said culvert is about five (5) feet high at said culvert, and that it gradually grows less in height for about six (6) or eight (8) rods, where it is level with the ground on each side. That the immediate and proximate cause of the injury resulted from, *first,* the crowning or narrow top or surface of the artificial embankment, and, *second,* the want of any barrier along the sides of said embankment or approach to said culvert to prevent vehicles from going over in the nighttime. * * *

"*Fourth.* If you find from the evidence in this case that Mr. Johnson had his team of horses in control, and that he was driving said horses at a reasonable rate of speed, and as an ordinarily prudent man would do, and that said horses were at or near the center of said highway, as was reasonable to expect when driving along and over said highway and approach to said culvert in the nighttime, and that when he was about three (3) rods west of said culvert the rear bob of his sleigh commenced to slide to the south, causing the tongue of said sleigh to strike against the horses, thus frightening them, and that said rear bob continued to slide around to the south off from said embankment and until it struck the end of said culvert, causing said sleigh to turn over, throwing plaintiff into ditch, and if you further find from the evidence that said rear bob of said sleigh was caused to slide to the south on account of the narrowness of said roadbed and its crowning or cone-shaped top or surface, and the accu-

mulation of snow and ice thereon, which narrowness and conelike or crowning shape of the highway concurred with the accumulation of snow and ice thereon to bring about the sliding of said sleigh off from said embankment, then and in that case the defendant is liable in this action, and your verdict should be for the plaintiff.     *    *    *

"*Sixth.* If the embankment was so narrow that, on account of its crowning top or surface, teams could not pass each other on it without being in danger of having their vehicles slip or slide off from the embankment, when said embankment and road was covered with a coat of snow and ice, then said road over said embankment was not a legal and lawful road, and said defendant should have either widened it, or constructed railings or barriers along the sides thereof to prevent vehicles from being overturned; and if, on the night in question, Mr. Johnson was in the exercise of due care on his part, and if he was driving his team in the center of the road, or as near to the center of the road as an ordinarily prudent man would and could drive in the nighttime and under similar circumstances, and if the sliding of the sleigh off from the embankment was due to the concurrence of the narrowness of the roadbed and its crowning or conelike top or surface, and the fact that said embankment was covered with snow and ice, then the defendant is liable in this action, and your verdict should be for the plaintiff for such damages as the evidence shows that she has sustained."

Seventeen errors are assigned, eight of which are based upon the refusal of the court to instruct the jury as requested by plaintiff and upon the instruction directing a verdict. The others relate to the rulings of the court in refusing to receive and in striking out certain testimony. The principal, and, for the purposes of this hearing, the controlling, question is whether the court should have submitted the case to the jury.

Ostrander, J. (*after stating the facts*). It does not appear from the testimony that the embankment upon which the road was laid was formed from earth drawn from a distance. It seems to have been made by turning, or turnpiking, the soil in the highway in such manner that, beginning a few rods from the highway at the level

of the surrounding land, the road was carried to the height of, and over, the culvert, and approaching which the embankment was, perhaps, six feet higher than the level of the land on either side.    It does appear that the top of the embankment was not wide enough to permit two teams to pass; and some witness, or witnesses, testify that outside the point at which wheels of a wagon would run on either side there was less than two feet of space upon the top of the embankment.    The testimony also tends to prove that the embankment was rounded; the highest point being in the center of the traveled way. We infer from the testimony that if there had not been snow and ice upon the road, rendering it slippery, a safe passage over it could have been made with a sleigh or a wagon, without any considerable, if any, risk, by a prudent driver.    But in this latitude there is more or less snow and ice during the winter months; and roads, as well as other structures, should be, and usually are, constructed with some reference to this fact.    A roadway, otherwise reasonably safe for public travel, is not usually made unsafe, within the meaning of the statute invoked in this case, because of natural accumulations of ice or snow thereon.    It is obvious, however, that a road may be constructed in such manner as to become unsafe for ordinary travel whenever its surface becomes slippery, and especially whenever it is covered with snow or with ice.    In other words, it may be so constructed that it is safe only when it is free from snow or ice, and is unsafe whenever it is covered with a natural accumulation of either.    We find it impossible to determine, as matter of law, that the roadway in question, as constructed and existing, was reasonably safe for public travel, that the driver of the horses was negligent, or that the proximate cause of the injury was the icy, slippery condition of the road.    We are of opinion that these questions should have been submitted to the jury.    *Malloy* v. *Township of Walker*, 77 Mich. 448 (43 N. W. 1012, 6 L. R. A. 695);

*Shaw* v. *Township of Saline*, 113 Mich. 342 (71 N. W. 642); *Gage* v. *Railroad Co.*, 105 Mich. 335 (63 N. W. 318); *Hannon* v. *City of Gladstone*, 136 Mich. 621 (99 N. W. 790).

Other assignments of error have been examined. The second appears to be based upon a misapprehension of the record. The question stated does not appear on the page of the record to which we are referred. The brief does not point out where the exception upon which the third assignment is based may be found.

The driver was asked whether a railing on either side of the embankment would have been any protection to him, and the answer was excluded upon the objection that opinion evidence was called for. The question is not precise. A railing would probably have made the road more safe for travel; whether a properly constructed railing would have saved the plaintiff from the particular injury depended upon how the jury might view certain of the testimony. We do not find reversible error in the ruling.

The fifth assignment is based upon a ruling excluding an answer to a leading question—a proper ruling, and one which this court should not be asked to review. The seventh assignment is equally frivolous.

The eighth assignment is based upon a ruling refusing an answer to a question asked of one of the women who was in the sleigh at the time. The question was:

" You stated that you watched the road, because you were afraid of it. Why were you afraid of it ? "

It is said in the brief that an answer to the question would have explained the condition of the road as the witness viewed it. The court advised counsel that they were permitted to discover all that the witness knew about the condition of the road; and the witness stated that it was narrow, very narrow. We do not see that plaintiff was prejudiced by the ruling. A witness, asked to describe the condition of the road, said:

"It was turnpiked up, and was what I call unsafe at that time, no railings at the side."

The court, on motion, struck out the statement that it was unsafe. Error is assigned upon this ruling; and in the brief it is said in support thereof:

"That part of the answer relating to the turnpike condition of the road and to the fact that there were no railings along the sides was certainly competent."

It is clear the court did not rule that it was incompetent, nor strike it out. The purpose of presenting the ruling in this court is not evident.

For the error pointed out, the judgment is reversed, and a new trial granted.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.