LAMB *v*. TOWNSHIP OF CLAM LAKE.

1. EVIDENCE—MUNICIPAL CORPORATIONS—HIGHWAYS.

Evidence of other accidents occurring prior to the one in suit, on a highway where deceased was killed, admitted by the court to prove constructive notice of the defective condition only, on a record showing that the highway remained in similar condition on the various occasions testified about, was competent and properly received, in an action for the death of plaintiff's decedent.

2. HIGHWAYS—DEFECTS—PERSONAL INJURIES.

Instructions in an action for the negligent killing of plaintiff's intestate on a defective highway, that plaintiff could recover if the defendant failed in performing any one of the duties mentioned in plaintiff's declaration, which alleged that defendant negligently failed to make the approach to an embankment over which decedent slipped in icy weather, straight and level, and (2) did not construct the top of the embankment of a safe width or level, and (3) negligently failed to guard its sides with barriers, railings, etc., (4) negligently failed to construct a safe embankment, (5) and negligently failed to have the highway sufficiently wide for the safety of deceased, *held*, insufficient, and that the court erred in omitting to leave to the jury the question whether it was defendant's duty to take such precautions as were claimed to be necessary in order to render the highway reasonably fit for public use.[1]

3. TRIAL—INSTRUCTIONS TO JURY—APPEAL AND ERROR.

It is to be presumed that the jury may have followed an instruction that is erroneous, although the court subse-

[1]On the question of the duty of a county or town to maintain barriers along rural highways or bridges, see note in 42 L. R. A. (N. S.) 267. And as to the duty of a town or municipality to provide barriers to protect travelers from obstructions outside the highway, see note in 20 L. R. A. (N. S.) 980. And for the duty to provide barriers against abandoned highway, see note in 37 L. R. A. (N. S.) 1158.

The decisions on the question of the liability of townships for defects in highways, generally, are reviewed in an extensive note in 13 L. R. A. (N. S.) 1219.

quently in the charge stated a correct rule conflicting with the language first employed.

4. HIGHWAYS AND STREETS—MUNICIPAL CORPORATIONS.
   Neither streets nor sidewalks are required to be absolutely safe—reasonable safety is all that the law demands.

5. SAME.
   When highways are constructed at such a height and so narrow between hills as to require barriers or railings to make the way safe and convenient for public traffic, a township is chargeable with negligence for failing to erect them, but it is not an absolute duty of a defendant to provide such protection.

Error to Wexford; Lamb, J. Submitted January 21, 1913. (Docket No. 17.) Decided April 8, 1913.

Case by Hugh Lamb, administrator of the estate of Roy Lamb, deceased, against the township of Clam Lake for the wrongful killing of decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*W. H. Yearned* and *Fred C. Wetmore,* for appellant.

*Howard F. Withey (F. O. Gaffney,* of counsel), for appellee.

STONE, J. This is an action on the case under the survival act, brought by the administrator of the estate of Roy Lamb, deceased, against the township of Clam Lake, to recover damages for the death of the decedent, caused by injuries received on an alleged defective highway in said township.

Roy Lamb, who was 26 years of age, left the village of Tustin on February 18, 1909, about noon, to go north to the city of Cadillac to get a load of telephone poles. He drove a team of horses hitched to a set of Belknap sleighs, upon which there was no box, and the bunks of which were 8 feet 6 inches apart. The decedent wore an ordinary suit of clothes, with an extra pair of overalls and a fur coat. He passed over

the highway in question, which had been in use as such for over 20 years, and which runs north and south between sections 31 and 32 of said township.

Approximately 100 rods south of the intersection of said highway with the north line of said sections, there is a hill fronting towards the south, and about 20 rods further south there is another hill fronting toward the north.   The north hill was about 25 rods long, with a gradual slope of 10 or 12 per cent. toward the south.   The traveled portion of said highway on this hill was from 12 to 14 feet wide.   The hills were connected by means of a fill which was from 10 to 11 feet wide, and from 7 to 9 feet high.   There were no barriers or railings of any description on this fill, either along the sides or at the north end, at the time in question.   This hill had been graded down, and partly by reason of this grading and in part from the natural conformation of the land at that point the road down this hill, toward the other hill, ran through a cut, with comparatively high banks on either side. Water ran down this hill from time to time, and at times washed out gulleys on one or both sides of the road.   At the time of the injury there was little or no washout in the cut on the east side, while on the west, or right-hand, side going down the hill toward the south, the roadbed had been washed away to some extent.   One witness testified that the west side of the cut was washed out; that you had to hug the east bank of the cut down; that the washing had taken nearly one-third of the road out on the west side.   The roadbed was turnpiked up in the center and made somewhat crowning.   The width of the cut at this point or junction with the north end of the fill is somewhat in dispute.   One witness testified that the cut in the hill is wider than the fill where the fill joins the cut; that it is anywhere from 4 to 6 feet on each side.   Another witness testified that at the north end of the cut it was 16 feet wide and the fill a little more

than 10 feet.   There was considerable snow on both the north and south hills on this day; and there is some dispute as to the amount of snow on the fill. Some witnesses testified that there was considerable snow there, while others testified that there was very little snow there.   In the afternoon of the 18th of February the weather was soft, and about 6 o'clock it began to sleet and rain, turned colder, and so continued until the morning of the 19th, when it became warmer.

Roy Lamb was found dead about 8 o'clock in the morning of the 19th of February on the east side of the fill.   An open knife, 6 or 7 inches in length, lay near his right hand.   One mitten lay a little to the right and the other one lay in front of his body; his overcoat was unbuttoned.   There was a jagged cut in his left wrist, from which considerable blood had flowed, covering a space of ground 10 or 12 feet wide and 15 or 16 feet in length.   There were on the sleigh 6 or 7 telephone poles from 20 to 25 feet in length and 8 or 9 inches in diameter at the butt ends.   The rear bobs of the sleigh were turned over, together with the swaybars.   The horses were still attached to the front bobs, which had become released from the rear bobs and swaybars.   Search was made for the key to the king bolt, but it was not found.   The team was headed toward the south.   One, and some witnesses testified two, of the telephone poles lay across the small of the back and another one on the legs of decedent.   All the poles were chained together, and the condition was such that, in the opinion of one witness, about half the load rested upon the body of decedent.   The poles were loaded with the butt ends upon the front bunks.   There were sleigh tracks on the north hill, and, when about one-third down the hill, they left the traveled track, so that the right hind sleigh track crowded the left-hand traveled track, in which manner they continued down to the

fill, when the right-hand runner of the front bob was near the center of the traveled track, and the rear bobs were the full width out of the traveled track. The sleigh went off the fill about 25 or 30 feet south of where the fill joins the north hill.

There was some conflict in the evidence as to the amount of ice upon the hill and upon the fill on the morning of the 19th of February. As the bobs came down the hill, apparently the hind bob never regained its proper position, but continued to the left of the traveled track clear out across the fill to the point where the entire conveyance went over the embankment. There was not much real conflict in the testimony as to the condition of the fill and the immediate surroundings, but there was more or less conflict in the evidence upon other branches of the case.

The case was submitted to the jury by the trial judge in a lengthy and, in the main, a well-considered charge, and resulted in a verdict and judgment for the plaintiff. The defendant has brought the case here upon writ of error. There are 19 assignments of error relating to the admission of testimony, the conduct of counsel for the plaintiff, the alleged error of the court in not granting defendant's motion to direct a verdict for defendant, and in the charge of the court.

The assignments of error have been grouped by counsel in their brief; and the first subject discussed by appellant is the ruling of the court in permitting several witnesses to testify concerning accidents which occurred on this highway prior to February 18, 1909. The court received this evidence, but confined it to the question of constructive notice to the defendant. It seems to us that, thus limited, the ruling of the court cannot be complained of; there being evidence tending to show like conditions of the premises. It would seem that, if limited to the question of notice, the farther back in point of time such notice was

brought to the attention of the defendant the more it would aggravate its negligence.

The next point complained of by appellant, being covered by assignments of error Nos. 11 and 12, may be considered together as embracing one subject. The court charged the jury as requested by plaintiff as follows:

"It is the claim of the plaintiff in this case that Roy Lamb met his death while driving along the highway in question, while himself in the exercise of that care that a reasonably prudent and cautious man would have exercised under like circumstances, and that his injury was due to some one of the following failures of duty on the part of the defendant or by reason of a concurrence of all or some of them; the failures of duty charged being in detail as follows:

"*First.* That said defendant negligently failed to make the approach down the hill, north of the fill or embankment in question, straight and level.

"*Second.* That said defendant did not construct the top of said embankment at the place where said embankment joined the foot of the hill, and at all other places, of a safe width and level.

"*Third.* That said defendant negligently failed to guard the sides of the aforesaid embankment with barriers, railings, or other structures, suitable and sufficient to prevent vehicles being driven along said highway in a usual and ordinary manner, from going over the sides of said fill.

"*Fourth.* That defendant negligently failed in its duty to so construct and maintain the embankment in question between the hills respectively north and south thereof, in such condition and of such width, that the general public, and particularly Roy Lamb, could pass down the hill on the north of said fill and along and over the said fill in the ordinary and usual method of travel on country highways, without unusual hazard and danger.

"*Fifth.* That said defendant negligently failed to have said embankment wide enough on top and level so said Roy Lamb would enter upon said fill in a straight and safe way, and could traverse the same

without having the vehicle and team, which he was driving, go over and down the sides of the fill."

The above portion of this charge, wherein it states the claim of the plaintiff, is unobjectionable, as it seems to have been in the exact words of the plaintiff's declaration, and was properly given as a statement of his claim. The trouble lies in the manner in which this statement of claim of the plaintiff was treated by the court in the next portion of the charge given, as requested by plaintiff, in the following language:

"I charge you that it was the duty of said defendant to do each and all of the five things just named; and I further charge you that if you find that defendant failed in performing any one or more of said duties, and if you also find that as a proximate result of the failure of any of said duties, or of a combination and concurrence of some or all of them, Roy Lamb was killed, while himself in the exercise of due care, then it will be your duty to render a verdict in favor of the plaintiff for whatever damages you find have been sustained by Roy Lamb's death, by reason of the acts complained of."

It is the contention of appellant that the court erred in thus instructing the jury, and that it there imposed a greater duty on the defendant than the statute imposes. The statute provides (section 3443, 1 Comp. Laws, 2 How. Stat. [2d Ed.] § 2464) as follows:

"It is hereby made the duty of townships * * * to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all public highways * * * that are within their jurisdiction, and under their care and control, and which are open to public travel," etc.

This statute has been passed upon by this court many times. In no case has this court said that a township was obliged to make an approach to a fill "straight and level"; nor has it said that it was the duty of a defendant in a given case to make a particular embankment or place "of a safe width and

level." Neither has it said that it was the duty of the township to guard sides of a fill "with barriers, railings, or other structures, suitable and sufficient to prevent vehicles being driven along said highway in an ordinary manner from going over the sides of said fill," unless these things were found by the jury to be necessary to render the highway in a condition reasonably safe and convenient for public travel, which latter fact, in all such cases, is a question for the jury. We have examined the charge with great care, and we can come to no other conclusion than that the court here substantially charged the jury that the defendant was negligent of duty in these particulars, and that it left nothing for the jury to find upon this branch of the case, because it was undisputed that the approach was not "straight and level" and that there were no barriers. It was well enough and proper to state to the jury what was claimed by the plaintiff, but when the court made use of this language, "I charge you that it was the duty of said defendant to do each and all of the five things just named; and I further charge you that if you find that defendant failed in performing any one or more of said duties, and if you also find that as a proximate result of the failure of any of said duties, or of a combination and concurrence of some or all of them, Roy Lamb was killed, while in the exercise of due care, then it will be your duty to render a verdict for the plaintiff," etc., it was substantially to direct a verdict for the plaintiff, and to leave nothing for the jury to consider but the question of damages.

It is true that the court, in a subsequent portion of its charge, gave the following request of defendant:

"If you find from the evidence that the highway in question was, at the time of the accident, in a condition reasonably safe and fit for public travel, then there can be no liability on the part of defendant, and your verdict will be no cause of action."

But what had the jury been instructed was necessary to render the highway reasonably safe? The difficulty is that this general language had been preceded by specific instructions that the defendant was really guilty of negligence in the five instances named, because it was unquestioned that the approach down the hill north of the fill or embankment in question was not made "straight and level"; and that the top of the embankment was not constructed "of a safe width and level." It is equally undisputed that there were no barriers, railings, or structures of any kind at the sides of the fill; and the jury were told, if we can understand the language used, that it was the duty of the defendant to do these things, to wit, make the approach "straight and level" and to erect barriers, railings, or other structures at this point; and the same language would apply to the two other subdivisions.

Counsel have not called our attention to any statutory requirement other than the general statute referred to. It has not been pointed out or claimed that any statutory duty to repair highways in any particular manner has been violated or its performance omitted. There is nothing in the record to indicate that the defendant had entered upon the plan for "permanent improvements" contemplated by section 15, chap. 2, of Act No. 283, Public Acts of 1909. We have held that when conflicting instructions are given, one of which is erroneous, it is presumed that the jury may have followed that which was erroneous. *Grand Rapids, etc., R. Co.* v. *Monroe,* 47 Mich. 152 (10 N. W. 179); *Madill* v. *Currie,* 168 Mich. 546 (134 N. W. 1004).

In one of the earlier cases on this subject of highways (that of *Malloy* v. *Walker Township,* 77 Mich. 448 [43 N. W. 1012, 6 L. R. A. 695]), the court correctly charged the jury as follows:

"You will first consider and determine the question whether this portion of the highway where the accident occurred was in a condition reasonably safe and fit for public travel, and in this case that question will depend upon your solution of another question, viz., whether or not suitable railings or barriers along the sides and at the top of the embankment in question were necessary to render the highway reasonably safe and fit for travel."

Here the question of the negligence of the defendant, under the charge as given, was made to depend upon the question of the duty of the defendant to erect and maintain these barriers, and, under the circumstances surrounding the case, was left as a question of fact for the determination of the jury. It certainly was a question for the jury to decide under the circumstances, in that case as in this, whether the road was in such condition that it was the duty of the defendant township to erect such guards or barriers in order to render the highway in a condition reasonably safe and convenient for travel.

In *Harris* v. *Clinton Township,* 64 Mich. 447, at page 457 (31 N. W. 425, 8 Am. St. Rep. 842), Justice CHAMPLIN, speaking for this court, said:

"The township is not obliged to keep its highways absolutely safe for travel. The statute only requires that it shall keep them reasonably safe and fit for public travel. * * * The jury were the proper persons to draw all proper inferences from the facts proved; and, from such facts and inferences therefrom, it was their province to determine whether the road was reasonably safe or not."

These cases have been followed by many others. *Sebert* v. *City of Alpena,* 78 Mich. 165 (43 N. W. 1098); *Ross* v. *Ionia Township,* 104 Mich. 320 (62 N. W. 401). In *Gage* v. *Railroad Co.,* 105 Mich. 335, at page 341 (63 N. W. 318), it was said:

"It was a question for the jury to determine whether barriers were necessary."

In *Shaw* v. *Saline Township*, 113 Mich. 342, at page 345 (71 N. W. 642), we said:

"We think it evident that whether a railing was necessary in order to render the approach to this bridge reasonably safe for public travel was a question for the jury."

In *Bigelow* v. *City of Kalamazoo*, 97 Mich. 121 (56 N. W. 339), it was said:

"Neither streets, sidewalks, nor crosswalks can be constructed upon a dead level.    *    *    *    Cities are not required to keep streets in a condition absolutely safe for travel.    A crosswalk must be reasonably safe."

*Comiskie* v. *City of Ypsilanti*, 116 Mich. 321 (74 N. W. 487) ; *Lauder* v. *St. Clair Township*, 125 Mich. 479-485 (85 N. W. 4) ; *Finch* v. *Village of Bangor*, 133 Mich. 149-151 (94 N. W. 738) ; *Hannon* v. *City of Gladstone*, 136 Mich. 621 (99 N. W. 790) ; *Stanton* v. *Webster Township*, 170 Mich. 428 (136 N. W. 421) ; *Lubbers* v. *Manlius Township*, 172 Mich. 387 (137 N. W. 804).

It was, in our opinion, for the jury to determine whether the highway was in such a condition as to require the erection of barriers. *Speck* v. *Bruce Township*, 166 Mich. 550 (132 N. W. 114, 35 L. R. A. [N. S.] 203).

It is undoubtedly the law in this State that, where a highway is built at such a height and so narrow between hills as to require barriers or railings to make it reasonably safe and convenient for public travel, it becomes the duty of the township to erect them, and, failing to do so, the township is liable for injuries resulting from its neglect of duty. But it was error to instruct the jury that it was the absolute duty of the township to erect such barriers. To approve of this charge would to be to lay down and impose a greater duty upon the township than the statute imposes. For the reasons above stated, we are con-

strained to reverse the case. We have examined the other assignments of error, and find no other reversible error in the record.

For the error pointed out, the judgment of the circuit court is reversed, and a new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.