## HARGIS *v.* CITY OF DEARBORN HEIGHTS

1. BRIDGES—STATUTES—FAILURE TO FENCE—NEGLIGENCE.

    County road commissions and cities have the statutory duty to keep roads, bridges, and culverts under their jurisdiction in reasonable repair so that they shall be reasonably safe and convenient, or fit, for public travel; failure to erect a barrier or railing may, under some circumstances, constitute a failure to conform to the statutorily-prescribed standard of care (MCLA § 224.2).

2. BRIDGES—DRAINS—STATUTES—FAILURE TO FENCE—NEGLIGENCE.

    A question of fact existed as to whether the failure of a county road commission and a city to erect a fence or barrier which would discourage the use of a terraced open drain-bridge area as a pedestrian shortcut or a place of play by children constituted a failure to meet the statutorily-prescribed standard of care where there was evidence capable of supporting a finding that the road commission and the city were aware, or should have been aware, of the use of the terraced area (MCLA §§ 224.21, 242.1).

3. BRIDGES — DRAINS — COUNTIES — MUNICIPAL CORPORATIONS — NEGLIGENCE — STATUTES.

    County road commission and city were both subject to liability for the death of plaintiff's decedent, who drowned when he

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 39 Am Jur 2d, Highways, Streets, and Bridges § 402 *et seq.*
Liability for injury on highway or bridge at town, municipal, or county line. 8 ALR 1274.
Duty as regards barriers for protection of automobile traffic. 86 ALR 1389, supp. 173 ALR 626.
Duty and liability of municipality as regards barriers for protection of adult pedestrians who may unintentionally deviate from street or highway into marginal or external hazards. 44 ALR2d 633.
[3, 4, 6] 39 Am Jur 2d, Highways, Streets, and Bridges § 345 *et seq.*
[5] 51 Am Jur 2d, Limitation of Actions § 19 *et seq.*
[7] 41 Am Jur 2d, Husband and Wife § 447 *et seq.*
Wife's right of action for loss of consortium. 36 ALR3d 900.

fell from a county-constructed bridge into waters rushing in a drain under the bridge, where the bridge was defectively designed in not being fenced, and the county had relinquished the bridge area to the city, because the county's failure to correct the defect before it relinquished jurisdiction to the city did not remove from the city the duty to correct the defect and the county's relinquishment of control over the bridge did not relieve it from liability for the consequences of its negligent acts of commission or omission before the jurisdictional transfer (MCLA §§ 224.18, 224.21, 242.1).

4. COUNTIES—BRIDGES—NEGLIGENCE—STATUTES.

Statutory declaration that a county shall be relieved of responsibility for a bridge upon the county's relinquishment of jurisdiction is not intended to relieve a county of responsibility for damages suffered after the jurisdictional transfer that were caused by a lapse in the performance of the county's statutory duty before the relinquishment of jurisdiction (MCLA § 224.18).

5. TORTS—PASSAGE OF TIME—LIABILITY.

The passage of time does not necessarily confer immunity on a wrongdoer.

6. COUNTIES—BRIDGES—RELINQUISHMENT OF JURISDICTION—NEGLIGENCE—PASSAGE OF TIME—CAUSATION.

The lapse of time between a county's transfer to a city of a bridge negligently designed in not having fences, and plaintiff's death when he drowned after falling from the bridge, was merely one of the factors to be considered in deciding whether the county's negligence was a cause of death; the time interval did not necessarily break the chain of causation.

7. DAMAGES—WRONGFUL DEATH—SOCIETY AND COMPANIONSHIP—INSTRUCTIONS TO JURY—PRESERVING ISSUES.

Defendants were not entitled to a new trial on damages even though the jury was instructed that loss of society and companionship were compensable in a wrongful death action and even though plaintiff's action was tried before a state Supreme Court decision declaring that loss of society and companionship are not compensable as items of pecuniary injury or loss where defendants did not object to the instructions.

Appeal from Wayne, Edward J. Gallagher, J. Submitted Division 1 March 8, 1971, at Detroit. (Docket Nos. 9171, 9292.) Decided June 24, 1971. Leave to appeal denied, 386 Mich 751.

Complaint by Carl W. Hargis, administrator of the estate of Jerry Michael Hargis, against the City of Dearborn Heights and Wayne County Board of Road Commissioners for wrongful death. Judgment for plaintiff. Defendants appeal. Affirmed.

*Bank, Pollick & Wartell,* for plaintiff.

*Alexander, Buchanan & Conklin* (by *Perry J. Seavitt*), for defendant City of Dearborn Heights.

*Martin, Bohall, Joselyn, Halsey & Rowe, P. C.,* for defendant Board of Wayne County Road Commissioners.

Before: DANHOF, P. J., and McGREGOR and LEVIN, JJ.

LEVIN, J. Jerry Michael Hargis, age eight, drowned in the Ecorse drain. His father, as administrator of his estate, commenced this action under the wrongful death act against the defendants, City of Dearborn Heights and County Road Commissioners of the County of Wayne. The defendants appeal from a jury verdict in plaintiff's favor.

The Ecorse drain is an open drain meandering through western Wayne County. Jerry Hargis drowned in April, 1965, after falling from a bridge or culvert constructed in 1961 by the road commission, into waters rushing in the drain. Before the accident, in 1963, the road commission had relinquished jurisdiction of the bridge to the City of Dearborn Heights. Thereafter the road commission maintained the bridge under a contract with the city.[1]

---

[1] The plaintiff has not, in advancing its claim against the county, asserted that the county is liable to the plaintiff because it failed

The road serviced by the bridge narrows as it passes over the bridge. The sidewalk approaches to the bridge, following the path of the narrowing roadway, angle toward the center of the roadway before passing over the bridge.

The bridge is of rip-rap construction; it is built on a foundation of broken stone and pavement entirely surrounding two tubes through which the water flows. The walls of the foundation are terraced so that there are steps from the floor of the drain to the level of the sidewalk. The terraces or steps extend from one embankment to the other.

It was possible, at the places where the sidewalks angled toward the center of the roadway, to take a shortcut to the other side of the drain by stepping off the sidewalk onto one of the terraces and walking along the terrace over the drain tubes to the other side where the sidewalk resumes.

There was considerable testimony that pedestrians took this shortcut and that children frequently played on the terraces and along the drain both before and after the transfer of jurisdiction of the bridge from the county to the city. The record would, therefore, support a jury finding that the defendants were aware, or should have been aware, of that use of the terraces.[2]

On the day that Jerry Hargis drowned, the drain had overflowed. There was water on the road and bridge. Jerry was riding as a passenger on a bicycle pedaled by another boy. When they reached the bridge they dismounted and the other boy walked the bike along the sidewalk across the bridge. Jerry

---

to perform its contractually-assumed responsibility to maintain the bridge.

[2] That the notice need only be constructive, not actual see *Holland v. County of Allegan* (1946), 316 Mich 134, 136, and *Burgdorf v. Holme-Shaw* (1959), 356 Mich 45, 50.

proceeded to cross the drain on one of the terraces. The water had receded to a point below the top of the tubes and was flowing rapidly through them. The other boy said he saw mud on a terrace. However, he did not see Jerry fall into the rushing water, and what caused him to fall is unknown. The plaintiff does not claim he fell because of a defect in the surface of the terrace.

The neglect charged against the defendants is the failure to erect a fence or other barrier which would bar or discourage use of the terraces as a short cut or as a place of play by children.[3]

The road commission and the city have the statutory duty to keep roads, bridges, and culverts under their jurisdiction in reasonable repair so that they shall be reasonably safe and convenient [or fit] for public travel.[4]  In *Mullins* v. *Wayne County* (1969),

---

[3] There was a vehicular guardrail on the side of the bridge and on its near approaches.  Not only was the guardrail too low to discourage shortcut users of the terraces, but it did not begin until about the point where shortcut users would leave the sidewalk—they could walk around the guardrail as well as step over it.

[4] The county's liability arises under the following statutory provision:

"It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges, and culverts that are within their jurisdiction and under their care and control and which are open to public travel.  The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system."  MCLA § 224.21 (Stat Ann 1958 Rev § 9.121).

The city's liability arises under the following statutory provision:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent

16 Mich App 365, 375, we considered this statutory liability of county road commissions and said that the law of Michigan was "that even if the surface of the road was perfectly engineered and constructed, the failure to design the road in a reasonably safe manner, including the erection of railings and barriers could be an act of negligence". As appears from the cases cited in *Mullins,* the failure of a township or city to erect a barrier or railing, as well as such a failure by a county, may constitute a failure to conform to the statutorily-prescribed standard of care.[5]

While roadside barriers are most commonly erected to mark the boundaries of, and to keep travelers from unintentionally straying from the roadway, they also serve to deter and prevent access to adjoining hazardous conditions. The terraces here had become a commonly-traversed pedestrian passageway—a passageway not protected by barrier or fence. Under the circumstances we could not say as a matter of law that there was no obligation to erect a fence or barrier to discourage use of the terraces. On the authority of *Mullins* and the earlier Michigan Supreme Court cases there cited and on the evidence in this case that the terraces had been used for some time as a shortcut by pedestrians and as a place of play by children, we are satisfied that it was a jury question whether it was negligence to fail to erect a

jurisdiction." CL 1948, § 242.1 (Stat Ann 1958 Rev § 9.591). [Repealed, PA 1964, No 170, § 14, eff. July 1, 1965.]

[5] "For additional cases holding that the jury may find negligence for failure of the road authority to provide railings or barriers needed to keep the road reasonably safe and convenient for public travel, see *Sharp v. Township of Evergreen* (1887), 67 Mich 443; *Ross v. Township of Ionia* (1895), 104 Mich 320, 324; *Hannon v. City of Gladstone* (1904), 136 Mich 621; *Lamb v. Township of Clam Lake* (1913), 175 Mich 77; and *Carpenter v. Township of Bloomingdale* (1924), 227 Mich 355." *Mullins v. Wayne County* (1969), 16 Mich App 365, 376.

fence or other barrier to discourage such use of the terraces.[6] The language of the Michigan Supreme Court in *Jablonski* v. *City of Bay City* (1929), 248 Mich 306, 310, is pertinent:

"[A city] cannot confine its citizens in a traffic groove. It must take into account the natural inclination of children to run about in play and the perverse insistence of adults to cut corners and cross streets and grass plats instead of following precisely the beaten or provided path. Such departure from the sidewalk is not negligence *per se* in the individual, nor does it relieve the city of the duty to keep its streets in proper condition for travel at the places where people may reasonably be expected probably to walk."

The county asserts that when it relinquished jurisdiction it ceased to have any further responsibility in the matter because the statute expressly provides that upon relinquishment of jurisdiction, "jurisdiction and control of such road, or part thereof, shall revert to the township or municipality within which the same is situated, and the county shall be relieved of the responsibility therefor".[7] The city asserts that it has no responsibility because the claimed de-

---

[6] The record evidence in this case of continuous use distinguishes this case from *Goodrich* v. *County of Kalamazoo* (1943), 304 Mich 442, and *Keyes* v. *Village of Marcellus* (1883), 50 Mich 439.

Here, in contrast with *Ferguson* v. *County of Muskegon* (1914), 181 Mich 335, the sidewalks were designed and constructed by the county road commission. Additionally, in *Ferguson* the injury occurred on the sidewalk, while here it occurred when Jerry Hargis fell off a terrace on the side of a bridge designed and constructed by the road commission. Also, chapter 21 (concerning "sidewalks") of PA 1909, No 283 was repealed by PA 1958, No 77; the statutory framework has changed in other respects as well, see *Court* v. *Clark* (1969), 19 Mich App 261. In all events, the verdict against the county is based on the jury finding that the road commission's failure to erect a fence or other barrier to discourage use of the terraces on the side of the bridge was a failure in the performance of the road commission's duty to keep a county road, bridge, or culvert reasonably safe and convenient for public travel.

[7] MCLA § 224.18 (Stat Ann 1971 Cum Supp § 9.118).

fect is in the design, not in the maintenance of the bridge. We conclude, on the facts of this case, that both the road commission and the city are subject to liability.

While the defect is one of design, both the county and, after the county relinquished jurisdiction, the city had a continuing obligation to keep the bridge and culvert "reasonably safe and convenient [or fit] for public travel". Thus, they both had a continuing obligation to correct the defective design. The county's failure to correct the defect—and the jury by its verdict found that there was a defect—does not insulate the city from liability for its negligence in failing to correct the defect.

Nor does the transfer of jurisdiction of the bridge relieve the county from liability for the consequences of its negligent acts of commission or omission before the transfer of jurisdiction. In declaring that the county "shall be relieved of responsibility" for the bridge upon relinquishing jurisdiction, the Legislature focused on the continuing responsibility to keep the bridge in repair, reasonably safe, and convenient for public travel. It was not intended thereby to relieve the county of responsibility for damages suffered after the transfer of jurisdiction that were caused by a lapse in the performance of the county's statutory duty which occurred before jurisdiction was relinquished. Whether Jerry Hargis' death was caused by the negligence of the county or of the city, or of both, or neither was a jury question. In resolving the causation question the time interval between the transfer of jurisdiction and the accident was a factor to be considered, but the passage of time did not necessarily break the chain of causation.

In *Kapalczynski* v. *Globe Construction Company* (1969), 19 Mich App 396, 405, we ruled that the ac-

cepted-work doctrine is not part of the law of this state. We said that several cases had dealt with the issue "in the factual context of a considerable lapse of time between the completion of the contractor's work and the injury and, nevertheless, allowed the injured plaintiff to recover". Although factually distinguishable, the principle of that case applies with equal force here. The lapse of time between the transfer of jurisdiction and the accident was merely one of the factors to be considered by the jury in deciding whether the county's negligence was a cause of the accident. "The passage of time does not necessarily confer immunity on a wrongdoer."[8]

Although the Hargis boy slipped from a terrace not designed for travel, and in using the terrace he was in a sense a trespasser, that does not relieve the defendants of their responsibility. The jury by its verdict found that the use of the terrace as a short-cut and as a place of play by children was known or should have been known by the defendants. The principle stated in *Lyshak* v. *City of Detroit* (1958), 351 Mich 230, 246, and *Swanson* v. *City of Marquette* (1959), 357 Mich 424, 429, is applicable. See, also, *Jablonski* v. *City of Bay City, supra.*

This action for wrongful death was tried before the decision of the Michigan Supreme Court in *Breckon* v. *Franklin Fuel Co.* (1970), 383 Mich 251, was announced. There the Supreme Court declared that loss of society and companionship are not compensable as items of pecuniary injury or loss. The defendants in the present case did not object to the judge's instructions to the jury that loss of society and companionship were compensable.

In *Benson* v. *Watson* (1970), 26 Mich App 142, 147, a panel of our Court held that a case pending on

---

[8] *Kapalczynski* v. *Globe Construction Company* (1969), 19 Mich App 396, 406.

direct appeal, tried before the *Breckon* decision was announced, should be remanded for a new trial limited to the question of damages without regard to whether the question decided in *Breckon* had been preserved for appeal. Our decision in *Benson* v. *Watson* was summarily reversed by the Supreme Court "for the reason that defendant failed to raise the issue in the trial court or save the question for appeal". *Benson* v. *Watson* (1971), 384 Mich 804.

The judge did not err in instructing the jury that it could consider as an element of damage the financial assistance that Jerry Hargis' parents could have expected from him during each of their natural lifetimes. *Black* v. *Michigan Central R. Co.* (1906), 146 Mich 568, 573; *Allison* v. *Chandler* (1963), 11 Mich 542, 555.

Affirmed. Costs to plaintiff.

All concurred.