KILLEEN v DEPARTMENT OF TRANSPORTATION

KURIPLA v DEPARTMENT OF TRANSPORTATION

Docket Nos. 78625, 79857. Argued May 3, 1988 (Calendar Nos. 7, 8). Decided February 21, 1989.

George Killeen, as personal representative of the estate of Robert P. Becker, deceased, brought an action in the Court of Claims against the Department of Transportation, Bureau of Highways, claiming that negligent design and construction by the department of the highway on which the decedent was killed rendered it not in reasonable repair or in a condition reasonably safe and fit for travel and caused the decedent's death. The court, Thomas L. Brown, J., granted summary disposition for the department. The Court of Appeals, ALLEN, P.J., and GILLIS, J. (W. J. GIOVAN, J., dissenting), affirmed, holding that liability was limited to the governmental agency which had jurisdiction of the highway at the time of the accident and that in this case, at the time of the accident, the highway was under the exclusive jurisdiction of the Genesee County Road Commission (Docket No. 77031). The plaintiff appeals.

David L. Kuripla, for himself and as personal representative of the estate of Rebecca J. Kuripla, deceased, brought an action in the Court of Claims against the Department of Transportation, Bureau of Highways, involving similar allegations with respect to a road in Clinton County. The court, Peter D. Houk, J., granted summary disposition for the department. The Supreme Court granted the plaintiff leave to appeal prior to a decision by the Court of Appeals (Docket No. 96202).

In an opinion by Justice LEVIN, joined by Justices BRICKLEY, CAVANAGH, and ARCHER, the Supreme Court held:

Where the Department of Transportation assumes jurisdiction of a county road, and redesigns and reconstructs the road, and then returns jurisdiction to the county road commission, it is subject to liability for injuries sustained in accidents caused by failures in design or construction while it had jurisdiction,

REFERENCES

Am Jur 2d, Highways, Streets and Bridges §§ 204, 344, 345.

See the Index to Annotations under Highways and Streets.

although the accident does not occur until after the department has relinquished jurisdiction.

1. The governmental tort liability act does not specifically provide that where jurisdiction of a highway is transferred from one governmental agency to another the transferor shall continue to be subject to liability for acts committed by it while it had jurisdiction that constituted a failure to keep the highway fit for travel and resulted in injury. However, the act clearly and unequivocally expresses a legislative intent that persons injured as a result of such failure shall have a cause of action against the governmental agency that committed the acts that constituted the failure to keep the highway fit for travel. While the act does not specifically provide that where an accident occurs after it relinquishes jurisdiction the governmental agency that failed to keep the highway fit for travel shall be responsible for the consequences of its acts which constituted a failure while it had jurisdiction, neither does the act, in terms, absolve the transferring governmental agency from responsibility for the consequences of its failure. The act, in terms, requires no more than that the failure have occurred while the governmental agency had jurisdiction, not that the consequences of that failure occur while it had jurisdiction.

2. The highway department is subject to liability for injury sustained by reason of failure in design or construction while it had jurisdiction, although injury is not sustained as a result of such failure until after retransfer of jurisdiction to the county road commission; the county road commission is responsible for any failure, after jurisdiction is returned to it, to keep and maintain in repair the redesigned and reconstructed highway.

Justice BOYLE concurred in the result.

Reversed and remanded.

Chief Justice RILEY, joined by Justice GRIFFIN, dissenting, stated that the highway exception to the Michigan governmental immunity statute encompasses only a duty of maintenance, and that liability for negligent design and construction of a highway is not within its scope.

Exceptions to the immunity provided under the governmental immunity act, including the highway exception, authorize suits against the sovereignty. They are regarded as a derogation of the common law and, thus, to be strictly construed. The highway exception provides that the governmental agency having jurisdiction over a highway is to maintain it in reasonable repair, indicating an intention merely to impose a duty of maintenance upon the agency and encompassing only those repairs necessary as a result of normal highway usage, not a

duty to repair defects in design or construction. To impute additional liability with respect to repair in design or construction by judicial amendment is inappropriate. Likewise, to impute such liability to counties to which jurisdiction is transferred is inconsistent. The transfer of jurisdiction over highways act clearly establishes that counties, in assuming jurisdiction, are not liable for any defect known at the time of transfer. It would be anomalous to penalize counties for defects not so known.

Justice GRIFFIN, dissenting, stated that liability imposed by § 2 of the governmental immunity act for injuries resulting from an accident caused by defects in the design and construction of a highway does not extend to a governmental agency which has no jurisdiction over the highway at the time of the accident.

151 Mich App 7; 390 NW2d 676 (1986) reversed.

HIGHWAYS — GOVERNMENTAL IMMUNITY — JURISDICTION — COUNTY ROADS.

The Department of Transportation, Bureau of Highways, is subject to liability for injury sustained by reason of failure in design or construction made while it had jurisdiction of a highway, although injury is not sustained as a result of such failure until after retransfer of jurisdiction to a county road commission has occurred; thereafter, the county road commission is responsible for any failure to keep and maintain in repair the redesigned and reconstructed highway (MCL 691.1402; MSA 3.996[102]).

*John J. Kalo* and *Robert G. Vaughan* for plaintiff Killeen.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Timothy J. Donovan*), for plaintiff Kuripla.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Carl K. Carlsen* and *Brenda E. Turner,* Assistant Attorneys General, for the defendants.

LEVIN, J. The governmental tort liability act provides for the recovery of damages from a governmental agency that fails to keep a highway

"under its jurisdiction" in reasonable repair, and in condition reasonably safe and fit for travel.[1]

In these cases, consolidated on appeal, the Department of Transportation, Bureau of Highways, redesigned and reconstructed intersections of county roads with trunk-line highways. Theretofore jurisdiction of the portions of the intersections that were county roads had been transferred by the county road commissions to the highway department. Thereafter and before the accidents that resulted in the deaths of the plaintiffs' decedents and injury to the plaintiff in *Kuripla,* jurisdiction of the county roads, so redesigned and reconstructed by the highway department, was retransferred to the county road commissions. Plaintiffs claim that the deaths and injuries were sustained on the redesigned and reconstructed county road portions of the intersections and that they were not in reasonable repair and in condition reasonably safe and fit for travel because of deficiencies in the design and construction by the highway department.

The question presented is whether the highway department is subject to liability under the governmental tort liability act to a person sustaining injury by reason of defects in design or construction of a county road made while the highway department has assumed jurisdiction of the county road where the accident occurs after the highway department has returned jurisdiction to the county road commission. We hold that the highway department is subject to liability for loss suffered as a result of design and construction defects[2] made

---

[1] MCL 691.1402; MSA 3.996(102), quoted in n 11.

[2] See *Peters v Dep't of State Hwys,* 400 Mich 50; 252 NW2d 799 (1977); *Arnold v Dep't of State Hwys,* 406 Mich 235; 277 NW2d 627 (1979); *Salvati v Dep't of State Hwys,* 415 Mich 708; 330 NW2d 64 (1982).

while it has jurisdiction, and that it is not absolved from responsibility by a retransfer of jurisdiction of the defective road to the county road commission.

I

In *Killeen v Dep't of Transportation,* 151 Mich App 7; 390 NW2d 676 (1986), plaintiff's decedent died as a result of injuries sustained when his motor vehicle crossed the centerline of a highway and rolled down an embankment. The plaintiff claimed that, in connection with the construction of an expressway interchange over ten years earlier, the highway department had assumed jurisdiction of the highway and that the negligent design and construction of a "superelevation" was a cause of decedent's death. In *Kuripla,* it was similarly alleged that two years before the accident the highway department had assumed jurisdiction and redesigned and reconstructed the highway, and that the plaintiff was injured and plaintiff's decedent was killed as a result of defects in the design and construction. Jurisdiction of both highways had been returned to the county road commissions before the accidents.

The Court of Claims granted summary judgment in *Killeen,* dismissing the complaint on the authority of *Potes v Dep't of State Hwys,* 128 Mich App 765; 341 NW2d 210 (1983), and granted summary judgment dismissing the complaint in *Kuripla* on the authority of *Potes* and *Killeen.* The Court of Appeals affirmed in *Killeen,* and this Court granted leave to appeal in *Kuripla* prior to deci-

See also *Bush v Oscoda Area Schools,* 405 Mich 716, 730; 275 NW2d 268 (1979), discussing *Malloy v Walker Twp,* 77 Mich 448, 458, 462; 43 NW 1012 (1889), and *Reardon v Dep't of Mental Health,* 430 Mich 398, 410; 424 NW2d 248 (1988).

sion by the Court of Appeals and directed that *Kuripla* be consolidated in this Court with *Killeen.*

In *Killeen,* the Court of Appeals declared that the facts in *Potes* were virtually identical to those in *Killeen* "involving the same stretch of highway, the same kind of single vehicle accident, and the same allegations of negligence against the Department of State Highways." In *Potes,* the Court had construed the governmental tort liability act "as limiting liability to the governmental agency having jurisdiction of the road *at the time of the accident.*" [3] (Emphasis in original.)

In *Potes,* the Court said that the act contemplates that the county road commission will be responsible for keeping county roads in reasonable repair, and reasoned that it "could result in confusion and inefficiency" to hold both the State Highway Department and the county road commission "responsible for correcting design or construction defects."[4]

A majority of the Court in *Killeen* agreed with the *Potes* analysis. It observed that at the time of the accident the highway was a county primary road under the exclusive jurisdiction of the county road commission, and that it had been the obligation of the county for upwards of ten years before the accident to maintain and repair the highway. The Court said that if the Legislature had intended to impose liability on governmental units that at one time had jurisdiction, it could have added the words "which at any time was" before the words "under its jurisdiction."[5]

---

[3] *Killeen v Dep't of Transportation,* 151 Mich App 7, 10-11; 390 NW2d 676 (1986).

[4] *Potes, supra,* p 769.

[5] *Killeen,* n 3 *supra,* pp 11-12. This is an empty argument. The injured person could counter by arguing in like vein that if the Legislature intended so to limit the liability of a governmental agency

The Court in *Killeen* considered *Hargis v Dearborn Heights,* 34 Mich App 594; 192 NW2d 44 (1971),[6] where the Court had held that the governmental authority that had jurisdiction when the reconstructed roadway was built was subject to liability, and repeated the observation in *Potes* that *Hargis* arose before the effective date of the governmental tort liability act.[7] It added that *Hargis* was inconsistent with later Court of Appeals decisions that had rejected the contention that two authorities could "have jurisdiction for determining liability of an allegedly unsafe highway" and,

for design or construction defects made while it has jurisdiction, it could have added the words "at the time of the accident" before the words "under its jurisdiction."

[6] The dissenting judge in *Killeen* said:

> In *Hargis v Dearborn Heights,* 34 Mich App 594; 192 NW2d 44 (1971), lv den 386 Mich 751 (1971), the Court held that the Wayne County Road Commission was not necessarily exempt from liability for negligent maintenance of a bridge by its relinquishment of jurisdiction over the bridge to the City of Dearborn Heights, the death in that case occurring after the transfer of jurisdiction to the city. It should be noted that the Court reached that conclusion notwithstanding a provision in the statute under consideration which provided that, upon relinquishment of jurisdiction, "jurisdiction and control of such road, or part thereof, shall revert to the township or municipality within which the same is situated, and the county shall be relieved of the responsibility therefor." [MCL 224.18; MSA 9.118.] As against the county's claim that this provision obviated any liability for an injury which occurred after the transfer of jurisdiction, the Court said:
>
> "Nor does the transfer of jurisdiction of the bridge relieve the county from liability for the consequences of its negligent acts of commission or omission before the transfer of jurisdiction. In declaring that the county 'shall be relieved of responsibility' for the bridge upon relinquishing jurisdiction, the Legislature focused on the continuing responsibility to keep the bridge in repair, reasonably safe, and convenient for public travel. It was not intended thereby to relieve the county of responsibility for damages suffered after the transfer of jurisdiction that were caused by a lapse in the performance of the county's statutory duty which occurred before jurisdiction was relinquished." [*Hargis, supra,* p 601.] [*Killeen,* n 3 *supra,* pp 15-16.]

[7] See n 11.

to the extent that *Hargis* conflicted with *Potes,*
*Hargis* was rejected.[8]

The dissenting judge in *Killeen* said he did not
read the governmental tort liability act as refer-
ring exclusively to an agency that had jurisdiction
of the highway at the time of the injury:

> I do not read the words "such governmental
> agency," as apparently the *Potes* Court did, as
> referring exclusively to an agency that had juris-
> diction over the highway at the time of the injury.
> The antecedent of "such governmental agency,"
> rather, is "any governmental agency" which failed
> to keep a highway under its jurisdiction in reason-
> able repair.
>
> Stated another way, the statute does not employ
> the term "jurisdiction" to identify a temporal
> circumstance that will render an injury actionable.
> It is used, rather, to identify the relationship of a
> governmental agency to a highway that will im-
> pose on the agency the duty of maintenance.
> Where the violation of that duty is causally re-
> lated to an injury, as is alleged in the case at bar,
> *I see nothing in the language of the statute dis-*
> *closing a purpose to insulate a governmental*
> *agency from liability for the consequences of im-*
> *proper maintenance by nothing more than the*
> *transfer of jurisdiction over the highway to an-*
> *other agency prior to the occurrence of the inju-*
> *ry.*[9] [Emphasis added.]

II

The governmental tort liability act does not,
indeed, specifically provide that where jurisdiction
of a highway is transferred from one governmental
agency to another the transferor shall continue to
be subject to liability for acts committed by it

---

[8] *Killeen,* n 3 *supra,* p 12.
[9] *Id.,* pp 14-15.

while it had jurisdiction that constituted, when it had jurisdiction, a "failure" "to keep" a highway fit for travel should a person sustain injury by reason of such failure after it relinquishes jurisdiction of the highway.[10]

The act does, however, clearly and unequivocally express legislative intent that a person injured by reason of a "failure" "to keep" a highway fit for travel shall have a cause of action against a governmental agency. And it just as clearly and unequivocally evidences legislative intent that the injured person shall bring his action against the governmental agency that committed the acts that constituted the "failure" "to keep" the highway fit for travel.

The act provides that a person suffering bodily injury "by reason of *failure of any governmental agency* to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him *from such governmental agency.*"[11]

---

[10] The words "failure" and "keep" appear in the second sentence of the act. See n 11 for text.

[11] Each governmental agency having jurisdiction over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of *failure of any governmental agency* to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him *from such governmental agency.* The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. . . . [MCL 691.1402; MSA 3.996(102). Emphasis supplied.]

MCL 224.21; MSA 9.121 states:

It is hereby made the duty of the counties to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care

(Emphasis added.) If, as plaintiffs allege, defective design or construction of the highways constituted "failures" of the highway department "to keep" highways in condition reasonably safe and fit for travel, then such "failure" of the highway department in the performance of its statutory duty manifestly could only have occurred while it had jurisdiction.

In providing that the injured person may recover damages "from *such* governmental agency," (emphasis added), the act in terms imposes liability on the governmental agency responsible for the failure. The words "from *such* governmental agency" incontrovertibly refer to the governmental agency that "failed" to keep the highway fit for

and control and which are open to public travel. The provisions of law respecting the liability of townships, cities, villages and corporations for damages for injuries resulting from a failure in the performance of the same duty respecting roads under their control, shall apply to counties adopting such county road system. Actions arising thereunder shall be brought against the board of county road commissioners of the county and service shall be made upon the clerk and upon the chairman of the board made defendant therein, which shall be named in the process as the "board of county road commissioners of the county of _____." and any judgment obtained thereon against such board of county road commissioners shall be audited and paid from the county road fund as are other claims against such board of county road commissioners: Provided, however, That no board of county road commissioners, subject to any liability under this section, shall be liable for damages sustained by any person upon any county road, either to his person or property, by reason of any defective county road, bridge or culvert under the jurisdiction of the board of county road commissioners, unless such person shall serve or cause to be served within 60 days after such injury shall have occurred, a notice in writing upon the clerk and upon the chairman of the board of county road commissioners of such board, which notice shall set forth substantially the time when and place where such injury took place, the manner in which it occurred, and the extent of such injuries as far as the same has become known, the names of the witnesses to said accident, if any, and that the person receiving such injury intends to hold such county liable for such damages as may have been sustained by him.

travel "by reason" of which plaintiff sustained injury or damage. Had the accidents in *Killeen* and *Kuripla* occurred before the retransfer of jurisdiction of the county roads to the county road commissions, the highway department—not the road commissions—would clearly have been the governmental agency subject to actions by the plaintiffs.

While the act does not specifically provide that the governmental agency—here the highway department—that failed to keep the highway fit for travel shall be responsible for the consequences resulting from its acts constituting a "failure" while it had jurisdiction when an accident occurs after it relinquishes jurisdiction, neither does the act, in terms, absolve the transferring governmental agency from responsibility for such consequences of its "failure" while it had jurisdiction. The act, in terms, requires no more than that the failure shall have occurred while the governmental agency had jurisdiction, not that the consequences of that failure occur while it had jurisdiction.[12]

---

[12] Since it is clear that damages may be recovered under the governmental tort liability act only from the governmental agency that failed to keep the highway fit for travel, the view expressed in the dissenting opinion that the highway department is not subject to liability for the consequences of its failure where the accident occurs after the retransfer of jurisdiction of the defective highway to the road commission suggests that the signers of the dissenting opinion proceeded on the unstated premise that the county road commission is responsible for failing to correct design and construction defects brought about by the highway department at least where the road commission had sufficient time after the retransfer of jurisdiction to correct the defects before the accident, but failed to do so. This suggestion is reinforced by the references in that opinion to the responsibility and authority of the road commissions to keep and maintain county roads, and the statement therein that the Legislature intended that road maintenance responsibility be imposed "upon only one entity of government at any given time." (*Post,* p 30.) But the dissent indicates elsewhere that a road commission might not be subject to liability for "negligence on the part of the state prior to its transfer of jurisdiction to the county." (*Post,* p 31, n 7.)

The dissent states, and we agree, that this Court should not "amend" or "expand" by judicial construction the language or the meaning of the word "jurisdiction."[13] The design and construction "failures" alleged in the complaints occurred if at all—they could only have occurred—while the highway department had jurisdiction. It is the dissent that

The opinion states:

> I would not decide, nor do I intend to imply, that a county having jurisdiction at the time of an accident should be liable for negligence on the part of the state prior to its transfer of jurisdiction to the county. That question is not before us. [*Post*, p 31, n 7.]

The implication is that possibly neither the highway department nor a county road commission is responsible for design or construction failures where jurisdiction is retransferred to the road commission after the highway department brings about the design or construction failure. The highway department is not responsible—unless the accident adventitiously occurs in the time between the completion of construction and the return of jurisdiction to the county—because, in the view of the dissenters, the highway department did not have jurisdiction at the time of the accident. The county road commission might, it appears, then be found to be not subject to liability because the design or construction defect is attributable to "negligence on the part of the state prior to its transfer of jurisdiction to the county."

[13] *Post*, pp 26 and 28.
    The dissenting opinion (*post*, pp 27-28, n 4) quotes with apparent approval a statement in 39 Am Jur 2d, Highways, Streets, and Bridges, § 346, pp 728-729, to the effect that a statute providing for governmental liability for injuries caused by a defective highway is not to be " 'extended by construction beyond the *plain meaning* of the terms used . . . .' " (Emphasis added.) This Court has observed:

> It has been said [2A Sands, Sutherland Statutory Construction (4th ed), § 46.01, p 49] that "[i]n many instances, expressions of the plain meaning rule may be a kind of verbal table thumping to express or reinforce confidence in an interpretation arrived at on other grounds instead of a reason for it." Similarly, Professor Corbin [Corbin, Contracts, § 542, pp 109-110] wrote that statements about "plain and clear" meaning of a writing "assume a uniformity and certainty in the meaning of language that do not in fact exist." [*Shiffer v Gibraltar Schools Bd of Ed*, 393 Mich 190, 194; 224 NW2d 255 (1974).]

Similarly see *People v Gilbert*, 414 Mich 191; 324 NW2d 834 (1982).
    It has been said: "The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification." *United States v Monia*, 317 US 424; 431; 63 S Ct 409; 87 L Ed 376 (1943) (Frankfurter, J., dissenting).

would add words to the statute by reading into the statute the gloss that a governmental agency, subject, when the design and construction failures occurred, to liability for the consequences of breach of its statutory duty to keep the highways fit for travel, can absolve itself from further responsibility for the consequences of its failures by transferring jurisdiction of the defective highways to another governmental agency.

In assuming jurisdiction over these highways, the highway department asserted that it had the authority to redesign and reconstruct the highways. Having done so, it should not be heard to disavow its responsibility for defects in design and construction caused by it on the basis that it had ceased to assert its authority or jurisdiction over the highway.

We agree with the dissenting judge in *Killeen* that "jurisdiction" "identif[ies] the relationship of a governmental agency to a highway that will impose on the agency the duty of maintenance."[14]

We hold that the highway department is subject to liability for injury sustained by reason of failures in design or construction while the highway department had jurisdiction, although injury is not sustained as a result of such failure until after retransfer of jurisdiction to the county road commission, and that the county road commission is responsible for any failure, after jurisdiction is returned to it, to keep and maintain in repair the redesigned and reconstructed highway.

III

In reaching the conclusion that the highway department is not subject to liability in the instant cases because it did not have jurisdiction of the

[14] See n 9 and accompanying text.

highways at the times of the accidents,[15] the dissent observes that a statute[16] imposes on the counties the duty to keep and maintain county roads in reasonable repair so they are reasonably safe and convenient for public travel and reason that to "superimpose continuing liability on the state, which no longer had jurisdiction over the roads in question, would undermine the responsibility and control conferred by the Legislature upon the counties."[17] It is argued, by quoting with apparent approval a statement in *Potes,* that " '[t]o hold two governmental units responsible for correcting design or construction defects could result in confusion and inefficiency.' "[18]

These arguments ignore that significant funding for the redesigned and reconstructed highways was provided by the federal government under a federal statute providing that construction so funded "shall be undertaken by the respective State highway departments or under their direct supervision."[19] The Director of the Department of Transportation is authorized by a Michigan statute to "[d]o anything necessary and proper to comply fully with the provisions of present or future federal aid acts."[20]

Although the constitution provides that the counties shall have "reasonable control of their highways,"[21] it cannot be gainsaid that a county road commission could not block a transfer to the Department of Transportation of jurisdiction over an intersection with an interstate highway that

[15] *Post,* p 25.
[16] MCL 224.21; MSA 9.121. See n 11 for text.
[17] *Post,* p 29.
[18] *Post,* p 26. *Potes, supra,* p 769.
[19] 23 USC 114.
[20] MCL 247.806a(h); MSA 9.216(6a)(h).
[21] Const 1963, art 7, § 29.

the director of transportation, in the exercise of the power so statutorily conferred, reasonably deemed necessary to carry out his responsibilities respecting the construction of highways.

Neither the constitution nor legislation confers responsibility and control over the design and reconstruction of federally aided intersections on the counties or county road commissions. On the contrary, it appears that responsibility and control of the design and reconstruction of such intersections has been conferred on the highway department.

IV

The dissent states that the construction of the governmental tort liability act advocated by the plaintiffs runs counter to the purpose and intent of an act[22] providing for the transfer of jurisdiction over highways from one highway authority to another. The transfer of jurisdiction act provides that a highway may not be transferred from the jurisdiction of one highway authority to another without the consent of both authorities except that a state or county highway authority may initiate proceedings for such a transfer whereupon a highway jurisdiction determination board shall be appointed to make a final determination of the question of the transfer of highway jurisdiction.[23]

In making its determination, a highway jurisdiction determination board is to take into consideration the level and character of service before and reasonably expected after the transfer[24] and include in its determination "a description of the renovation, repair or reconstruction work and the

---

[22] 1969 PA 296, MCL 247.851 *et seq.;* MSA 9.393(31) *et seq.*
[23] MCL 247.853, 247.854; MSA 9.393(33), MSA 9.393(34).
[24] MCL 247.856; MSA 9.393(36).

estimated cost necessary to bring the highway up to reasonable acceptable standards,"[25] such cost to be defrayed by the highway authority relinquishing jurisdiction.

The dissent reasons that "[t]he logical inference is that after the transfer, the transferee unit takes control and becomes responsible."[26]

The parties, in their supplemental briefs,[27] did not address the question whether design[28] or construction defects of the kind alleged in the instant complaints are included within the scope of the transfer of jurisdiction act.

In predicating its conclusion in these cases, where the plaintiffs alleged design and construction defects by the Department of Transportation, in part on this act, the dissent assumes arguendo, or says in effect, that design or construction defects of the kind alleged are included within the scope of the transfer of jurisdiction act providing that the transferor shall defray the estimated cost necessary to bring the highway up to reasonable acceptable standards.

We are inclined to the view that the Legislature expected that the two highway authorities or a highway jurisdiction determination board would confine the inquiry to the costs necessary to bring the highway up to reasonable acceptable standards without regard to design or construction defects that do not implicate the future maintenance re-

[25] MCL 247.858; MSA 9.393(38).

[26] *Post*, p 29. See also *post*, p 30.

[27] Neither the plaintiffs nor the Attorney General suggested in their original briefs filed with this Court that the transfer of jurisdiction act has any bearing on the construction of the governmental tort liability act. This Court directed the parties to file supplemental briefs on the question of the intention of the Legislature with respect to liability for road defects in light of the transfer of jurisdiction act and any other enactment or regulation.

[28] See n 2.

sponsibility of the transferee, and did not intend that a highway jurisdiction determination board could decide that recent design and construction by the highway department of a new intersection was inadequate and require the highway department to provide the estimated cost of redesigning or reconstructing the intersection, as determined by the highway jurisdiction determination board, as a precondition of a retransfer of jurisdiction to a county road commission. If the Legislature did not intend to confer such authority on a highway jurisdiction determination board, then the "estimated cost necessary to bring the highway up to reasonable acceptable standards" does not include the cost of redesigning and reconstructing an intersection recently designed and reconstructed by the highway department, and the transfer of jurisdiction act has no bearing on the construction of the governmental tort liability act in the instant cases.

We conclude that the transferor remains subject to liability, as provided in the governmental tort liability act, for design or construction defects that occurred before the transfer,[29] but not for any failure thereafter of the transferee to keep the highway up to reasonable acceptable standards of renovation, repair, or reconstruction, the estimated cost of rectifying deficiencies in which is indeed to be determined once and for all when the transfer occurs pursuant to the transfer of jurisdiction act.

V

We hold that when the highway department assumes jurisdiction of a county road, and redesigns and reconstructs the road, and then returns

---

[29] The transferee would be subject to liability for injury by reason of any posttransfer failure in the design of the highway.

jurisdiction to the county road commission, the highway department is subject to liability for injuries sustained in accidents caused by failures in design or construction while it had jurisdiction, although the accident does not occur until after the highway department has relinquished jurisdiction.

We reverse the decision of the Court of Appeals in *Killeen* and the decision of the Court of Claims in *Kuripla,* and remand both cases to the Court of Claims for trial.

BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring*). I concur in the result reached by the majority because I am not persuaded that the Legislature intended MCL 691.1402; MSA 3.996(102) to absolve the state from liability under these facts.

RILEY, C.J. (*dissenting*). I respectfully dissent from the majority. I agree with Justice GRIFFIN's conclusion that § 2[1] is clear in that it imposes liability only upon a governmental agency with jurisdiction over a highway. However, I write separately to respond to the majority holding that the state is liable for highway design and construction defects. It is my opinion that the highway exception to Michigan's governmental immunity statute[2] encompasses only a duty of maintenance and does not include liability for the negligent design and construction of highways. Therefore, I would hold that the defendants remain shielded from liability in each of the present actions.

---

[1] MCL 691.1402; MSA 3.996(102).

[2] MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.*

I

The governmental immunity statute codified the common-law principle of sovereign immunity. See *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 596-608; 363 NW2d 641 (1984). The current version of the governmental immunity act, MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* carves out four specific exceptions to this immunity,[3] one of which is § 2, the highway exception. These exceptions, which authorize suits against the sovereignty, are regarded as a derogation of the common law. Hence, they are to be strictly construed. 39 Am Jur 2d, Highways, Streets, and Bridges, § 346, pp 728-729. As pointed out in 3 Sands, Sutherland Statutory Construction (4th ed), § 62.01, p 113, the rule of strict construction has been most emphatically stated and regularly applied in cases where a statute makes the government amenable to suit. Accordingly, Michigan courts have generally followed this rule. See *Tibor v Dep't of State Hwys,* 126 Mich App 159; 337 NW2d 44 (1983); *Bennett v City of Lansing,* 52 Mich App 289; 217 NW2d 54 (1974).[4]

---

[3] MCL 691.1402; MSA 3.996(102), MCL 691.1405; MSA 3.996(105), MCL 691.1406; MSA 3.996(106), and MCL 691.1413; MSA 3.996(113).

[4] I acknowledge *Endykiewicz v State Hwy Comm,* 414 Mich 377; 324 NW2d 755 (1982), which states that the highway exception, § 2, need not be strictly construed as being in derogation of common law after the state abrogated its common-law immunity. However, this case is distinguishable.

The *Endykiewicz* case interprets the damages sentence of the statute which provides, "[a]ny person sustaining bodily injury or damage to his property . . . may recover the damages suffered by him." This Court said that this sentence was ambiguous; therefore, it should not be interpreted to limit a plaintiff's damages. Thus, the dispositive issue in the case centered on the amount of damages *after* liability had attached. It offers no insight into whether a governmental agency is liable for the negligent design or construction of a highway. *Id.* at 382.

Further, I reject the argument that the state abrogated its common-

Looking to the statute, the highway exception provides:

> Each governmental agency having jurisdiction over any highway *shall maintain the highway in reasonable repair* so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21, chapter 4 of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Compiled Laws of 1948. [MCL 691.1402; MSA 3.996(102). Emphasis added.]

In my view, the Legislature's choice of the words, "shall maintain the highway in reasonable repair," indicates its intention merely to impose a duty of *maintenance* upon the governmental agency having jurisdiction over a highway. Furthermore, I interpret "maintain . . . in reasonable repair" as encompassing only those repairs necessary as a result of normal highway usage. The statute does not impose a duty to repair defects in design or construction.[5]

If the Legislature had intended the highway

law immunity. In fact, the Legislature codified its common-law immunity with § 7. *Ross, supra* at 605-606. Thus, to the extent it conflicts with this opinion, I would overrule *Endykiewicz.*

[5] In *Mullins v Wayne Co,* 16 Mich App 365, 375; 168 NW2d 246 (1969), lv den 382 Mich 791 (1969), the Court of Appeals stated: "[t]he specific allegation of negligence in *Malloy [v Walker Twp,* 77 Mich 448; 43 NW 1012 (1889)], shows the duty of the road building authority goes beyond the preservation of the status quo, that it does indeed have the affirmative duty to design and construct the road and keep it 'reasonably safe and convenient for public travel.' "

I find *Mullins* distinguishable from the instant case. First, the issue in *Mullins* involved the county's duty to repair county roads under

exception to include liability for negligent highway design or construction, it could have so worded the statute. It is inappropriate to impute this additional liability by judicially amending the statute. Any statutory expansion must come from the Legislature, not this Court. *Peters v Dep't of State Hwys*, 400 Mich 50, 57; 252 NW2d 799 (1977); *McDowell v State Hwy Comm'r*, 365 Mich 268; 112 NW2d 491 (1961).

Although the majority charges the dissenters of judicially expanding the statute, I believe the opposite is true. The highway exception imposes only a duty to "maintain the highway in reasonable repair" upon a "governmental agency having jurisdiction." In the instant cases, the alleged negligent acts were not a breach of the duty to maintain, and the defendants did not have jurisdiction over the highways in question. Thus, notwithstanding the great lengths the majority takes to persuade us otherwise, to find the defendants guilty would be nothing short of expanding the scope of § 2 far beyond the words of the statute.

II

The majority and Justice GRIFFIN both address

---

MCL 224.21; MSA 9.121, whereas, here this Court is construing a governmental agency's duty to maintain highways under MCL 691.1402; MSA 3.996(102). The county is not a party to either of the instant actions. Thus, MCL 224.21; MSA 9.121 is inapplicable. Second, to support the conclusion in *Mullins,* the Court of Appeals relied on *Joslyn v Detroit*, 74 Mich 458; 42 NW 50 (1889), and *Malloy, supra,* which were both decided twenty years before the effective date of MCL 224.21; MSA 9.121. Finally, contrary to the highways in the instant cases, the highways in *Mullins, Joslyn,* and *Malloy* never left the jurisdiction of the local authority. Therefore, I would hold that there is no duty to repair defects in highway design or construction pursuant to § 2.

I take this position notwithstanding my decision in *Reardon v Dep't of Mental Health,* 430 Mich 398; 424 NW2d 248 (1988). It is my belief that statutes drafted by the Legislature which govern the state highway system should be read *in pari materia.*

the inequity of inferring liability upon a county for the negligence of the state. I agree. Support for this position is found in the transfer of jurisdiction over highways act, MCL 247.858; MSA 9.393(38). Specifically, subsection (4) provides:

> *The cost of renovation, repair or reconstruction of the highway shall be paid by the highway authority relinquishing jurisdiction* except to the extent that the highway authority gaining jurisdiction is required to participate in such cost in accordance with the provisions of Act No. 51 of the Public Acts of 1951, as amended, being sections 247.651 to 247.673 of the Compiled Laws of 1948. [Emphasis added.]

The language emphasized clearly establishes that the counties, as the assuming jurisdiction, would not be liable for any defect known at the time of transfer. Therefore, it would be anomalous to "penalize" them merely because the defect was not known at the time of transfer. It would be similarly inconsistent to hold the counties responsible for any damages arising from this latent defect.

While here highway jurisdiction was transferred by written agreement pursuant to MCL 247.852; MSA 9.393(32), it is reasonable to assume that the counties would not have agreed to the respective transfers had they been aware of a design defect. Therefore, the state would have had no recourse but to impose upon the counties a nonconsensual transfer pursuant to MCL 247.853-247.858; MSA 9.393(33)-9.393(38). Thus, § 8(4) would have been applicable.

After pointing out that the parties were directed to file supplemental briefs on the question of legislative intent with respect to liability for road defects "in light of the transfer of jurisdiction act

. . . ," the majority held that "the transfer of jurisdiction act has no bearing on the construction of the governmental tort liability act in the instant case." It is ironic that while the majority found a state highway statute inapplicable in the instant case, it found that a federal funding statute[6] did provide insight as to the legislative intent of the state highway exception statute. I believe that the state's transfer of jurisdiction over highways act does, in fact, offer an accurate indication of the intent of a legislative scheme to direct responsibility for our state's highway system. Conversely, I believe the federal funding statute cited by the majority is of little consequence to the issues being decided here.

Finally, my original contention, that the liability for negligent design and construction of a highway is not within the scope of § 2, would eliminate the possibility of a county being liable for the state's negligence. The statute only imposes a duty to "maintain," not to design and construct. Read with this in mind, the statute is clear in that the agency with jurisdiction is liable only for highway maintenance. Therefore, the need for judicial expansion of the word, "jurisdiction," is unnecessary because the ordinary meaning of "jurisdiction," as contemplated when the statute was drafted, would suffice.

Governmental agencies are shielded from liability while in the discharge of their governmental functions. *Ross, supra* at 625; MCL 691.1407; MSA 3.996(107). There is no dispute that the Department of Transportation was engaged in the performance of its governmental duty when it designed and constructed the highways in question. Because I feel the acts of negligent design and construction

---

[6] 23 USC 114.

do not fall within the highway exception statute, the defendants should remain immune to liability.

Therefore, I would affirm summary disposition in favor of the defendants.

GRIFFIN, J., concurred with RILEY, C.J.

GRIFFIN, J. (*dissenting*). As this Court recognized in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984), "[t]he heart of the [governmental immunity] act is § 7,[1] which provides broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function . . . ." Section 7(1) states:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

When a governmental agency engages in the design, construction, maintenance, or repair of a highway, it performs a governmental function within the meaning of § 7(1) if such "activit[ies] [are] expressly or impliedly mandated or authorized by constitution, statute, or other law." See *Ross, supra* at 625; *Thomas v State Hwy Dep't*, 398 Mich 1; 247 NW2d 530 (1976).

One of the statutory exceptions to governmental immunity is set forth in § 2,[2] which provides in pertinent part:

---

[1] MCL 691.1407; MSA 3.996(107).

[2] MCL 691.1402; MSA 3.996(102).

Each governmental agency *having jurisdiction* over any highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway *under its jurisdiction* in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency. [Emphasis supplied.]

There is no dispute that the Department of Transportation did not have jurisdiction over either of the highways in question at the times of the accidents which gave rise to these lawsuits.

A

Plaintiffs in the cases before us rely upon *Hargis v Dearborn Heights,* 34 Mich App 594; 192 NW2d 44 (1971), lv den 386 Mich 751 (1971), wherein a county road commission constructed a bridge and then relinquished jurisdiction in 1963 to the city. Thereafter, in 1965 a young boy fell from the bridge and drowned, and his father sued both the county and the city. The Court of Appeals held that "[w]hile the defect is one of design, both the county and, after the county relinquished jurisdiction, the city had a continuing obligation to keep the bridge and culvert 'reasonably safe and convenient [or fit] for travel.' Thus, they both had a continuing obligation to correct the defective design." *Id.* at 601.

On the other hand, the defendant Department of Transportation relies upon the later, 1983 decision of the Court of Appeals in *Potes, supra.* The facts of *Potes* were almost identical to the facts in *Killeen* and even involved the same stretch of

highway. As in these cases, the plaintiff in *Potes*
sought to hold the state liable for design and
construction defects allegedly created before the
state returned jurisdiction to the county.

The *Potes* panel construed § 2 as limiting liabil-
ity to the governmental agency having jurisdiction
of the highway at the time of the accident:[3]

> [W]e view that statutory exception [§ 2] as part-
> ing the immunity curtain only as to the govern-
> mental unit having jurisdiction of the subject road-
> way at the time of the accident. Application of this
> rule is compatible with the language of MCL
> 224.21; MSA 9.121, which places the duty to keep
> county roads in reasonable repair exclusively upon
> the counties. See *Mullins v Wayne Co,* 16 Mich
> App 365; 168 NW2d 246 (1969), lv den 382 Mich
> 791 (1969). To hold two governmental units respon-
> sible for correcting design or construction defects
> could result in confusion and inefficiency. [128
> Mich App 769.]

*Potes* is consistent with a line of Court of Ap-
peals decisions which, except for *Hargis,* have held
that there can be no concurrent jurisdiction over a
highway. See *Austin v City of Romulus,* 101 Mich
App 662; 300 NW2d 672 (1980), lv den 411 Mich
955 (1981); *Furness v Public Service Comm,* 100
Mich App 365; 299 NW2d 35 (1980); *Summerville v
Kalamazoo Co Road Comm,* 77 Mich App 580; 259
NW2d 206 (1977), lv den 402 Mich 924 (1978);
*Bennett v City of Lansing,* 52 Mich App 289; 217
NW2d 54 (1974), lv den 399 Mich 840 (1977).

B

Plaintiffs would have us judicially amend the

---

[3] In addition, the *Potes* Court distinguished *Hargis* on the ground
that the cause of action in *Hargis* accrued prior to July 1, 1965, the
effective date of 1964 PA 170, the governmental immunity act. MCL
691.1401 *et seq.;* MSA 3.996(101) *et seq.*

language of § 2 so as to waive immunity with respect to any governmental agency which *ever had* jurisdiction over a highway. In construing a statute, words and phrases are to be given their ordinary and common-sense meaning. *Stadle v Battle Creek Twp,* 346 Mich 64, 68; 77 NW2d 329 (1956); MCL 8.3a; MSA 2.212(1). The common-sense meaning of "having jurisdiction" is jurisdiction at the present time or at the time in question. I agree with the Court of Appeals in *Killeen,* at 11-12, where it stated:

> Had the Legislature intended to impose liability on governmental units which at one time had jurisdiction over a highway but did not have such jurisdiction at the time of the accident, the Legislature could easily have worded the statute to read "failure . . . to keep any highway which *at any time* was under its jurisdiction in reasonable repair." [Emphasis in original.]

Statutory exceptions to governmental immunity are to be strictly construed. See *Ross, supra* at 606-607.[4] As this Court said in *Peters v Dep't of State Hwys,* 400 Mich 50, 57; 252 NW2d 799 (1977):

[4] See, generally, 57 Am Jur 2d, Municipal, School, and State Tort Liability, § 60, p 69; 89 ALR 394; *Genesee Co Rd Comm v State Hwy Comm,* 86 Mich App 294; 272 NW2d 632 (1978). See also Hammond & Osborne, *Annual survey of Michigan law: June 1, 1985—May 31, 1986, Government law,* 33 Wayne L R 645, 655 (1987): "Courts must strictly construe statutory exceptions to immunity to achieve the legislative intent of immunizing governmental agencies engaged in governmental functions. The statute codifying the highway exception clearly limits liability to the failure to maintain highways in reasonable repair."

Also 39 Am Jur 2d, Highways, Streets, and Bridges, § 346, pp 728-729:

> In many jurisdictions, liability for injuries caused by defective highways, streets, and bridges is expressly or by necessary implication imposed on counties and towns (or townships). Such statutes are generally regarded as being in derogation of the common law, and hence are strictly construed. They are not

[T]he conditions precedent to establishing the
state's liability are questions for the Legislature
and it is not the proper function of this Court to
limit or to enlarge clear statutory provisions by
construction.

It would be beyond the "proper function of this
Court" to judicially expand the meaning of § 2 so
as to impose liability upon any governmental en-
tity which at any time had jurisdiction over the
highways in question.

C

Our interpretation of § 2 of the governmental
immunity act is reinforced by constitutional and
statutory provisions which evince a general
scheme for establishing exclusive jurisdiction over
each of Michigan's roads and highways.

Const 1963, art 7, § 29 provides for local govern-
mental control and jurisdiction over nonstate high-
ways:

Except as otherwise provided in this constitution
the right of all counties, townships, cities and
villages to the reasonable control of their high-
ways, streets, alleys and public places is hereby
reserved to such local units of government.

By statute each governmental unit is required to
maintain the highways under its jurisdiction in
reasonable repair. For example, MCL 224.21; MSA
9.121 imposes such a duty upon the counties:

It is hereby made the duty of the counties to

extended by construction beyond the plain meaning of the
terms used, nor can an action be maintained under them
unless it is clearly within the scope and meaning of the act.

keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads, bridges and culverts that are within their jurisdiction and under their care and control and which are open to public travel.

At the time of the accident in each of the two cases before us, the roads involved, Ballenger Highway and Clark and DeWitt Roads, were under the control and jurisdiction of Genesee and Clinton Counties, respectively. To superimpose continuing liability on the state, which no longer had jurisdiction over the roads in question, would undermine the responsibility and control conferred by the Legislature upon the counties.

Furthermore, such reasoning runs counter to the purpose and intent of another statute, 1969 PA 296,[5] which is entitled:

AN ACT to provide for the transfer of jurisdiction over highways; to provide for the *final* determination of disputes involving transfers of highway jurisdiction; and to supersede certain acts and parts of acts. [Emphasis supplied.]

This statute establishes a "highway jurisdiction determination board" to finally resolve disputes relating to the transfer of jurisdiction over a highway,[6] and requires that the transferring governmental unit must bring the highway up to "reasonable acceptable standards" prior to the transfer. The logical inference is that after the transfer, the transferee unit takes control and becomes responsible. This inference is consistent with sub-

---

[5] MCL 247.851 *et seq.*; MSA 9.393(31) *et seq.*

[6] Section 2 of the act provides in part that "a highway may not be transferred from the jurisdiction of the state to the county . . . without the consent of both parties, except as provided by this act." By refusing to consent to a transfer, a county may invoke the protection of the act. MCL 247.852; MSA 9.393(32).

sections (3) and (4) of § 8 of that statute, which provide:

> (3) In lieu of undertaking the renovation, repair or reconstruction of a highway to be transferred pursuant to this act, the transferring highway authority may do 1 of the following, with the concurrence of the receiving highway authority:
>
> (a) Pay the estimated cost of such work to the receiving highway authority in order that the work may be undertaken by it.
>
> (b) Enter into a contract with the receiving highway authority for the receiving highway authority to perform the work and be reimbursed by the transferring highway authority. The contracts shall include such terms and conditions as agreed to and shall be subject to such approvals as may be required for other contracts of the highway authorities.
>
> (4) The cost of renovation, repair or reconstruction of the highway shall be paid by the highway authority relinquishing jurisdiction except to the extent that the highway authority gaining jurisdiction is required to participate in such cost in accordance with the provisions of Act No. 51 of the Public Acts of 1951, as amended, being sections 247.651 to 247.673 of the Compiled Laws of 1948. [MCL 247.858; MSA 9.393(38).]

Obviously, this statute is designed for the protection of the transferee governmental unit, by making certain that the transferring unit, prior to the act of transfer, will undertake any responsibility it may have for renovation, repair, or reconstruction.

This statutory scheme plainly reflects a policy on the part of the Legislature to place responsibility for maintenance and repair of a highway upon only one entity of government at any given time. It is well established that "[s]tatutes *in pari materia* should be construed together . . . ." *Webster v*

*Rotary Electric Steel Co,* 321 Mich 526, 531; 33 NW2d 69 (1948).

Sound reasoning undergirds the Legislature's policy. If § 2 were to be given the expansive interpretation urged by plaintiffs, a governmental agency which once had jurisdiction over a highway would forever be required to review the condition of the highway. Further, confusion and disagreement inevitably would arise between governmental units as to whether particular "defects" were related to design and construction. Although plaintiff in *Kuripla* contends that concurrent jurisdiction and multiple liability would encourage coöperation among governmental units, the Legislature has opted for exclusive jurisdiction, a scheme which presumably it considers is more efficient and is designed to minimize controversy among governmental units.

For the reasons stated, I would hold that such liability as is imposed by § 2 of the governmental immunity act does not extend to a governmental agency which has no jurisdiction over the highway at the time of the accident.[7]

---

[7] I would not decide, nor do I intend to imply, that a county having jurisdiction at the time of an accident should be liable for negligence on the part of the state prior to its transfer of jurisdiction to the county. That question is not before us.